BELLE YOUNG *et al.*, Respondents, v. C. W. THRASHER, Executor of HENRY C. YOUNG, Appellant.

St. Louis Court of Appeals, February 23, 1892.

1. **Administration**: OVERPAYMENT BY ADMINISTRATOR PURSUANT TO AN ORDER OF COURT. An administrator paid one of the distributees of an estate more than his distributive share, but did so in compliance with an order of the probate court having jurisdiction of the administration of the estate. *Held, arguendo,* that he was protected by the order of the court, and was, therefore, not chargeable with the amount of the overpayment in his accounts with the estate.

2. ———: PAYMENT WITHOUT ORDER OF COURT. An administrator is entitled to credits in his settlements with the estate for a payment made to a distributee without any order of the probate court, if the amount paid is not more than the distributee is entitled to.

3. ———: INDEBTEDNESS OF ADMINISTRATOR TO DECEDENT: INTEREST. Under our statute (R. S. 1889, sec. 98), the indebtedness of an administrator to the intestate constitutes an asset in the hands of the administrator, but is not to be treated as paid by him, until by charging himself in his accounts with the amount thereof as money, or otherwise, he expresses a plain intention to pay it; accordingly, when a solvent administrator inventories an overdue note, given by himself to the intestate, as a note belonging to the estate, but does nothing further, he continues liable for interest subsequently accruing thereon, and in his final settlement should be charged with interest to the time of such settlement.

4. ———: ———: ———. But *held*, by BIGGS, J., *dissenting*, that whenever a solvent administrator admits the validity of such indebtedness by entering the same in his inventory of the estate, the amount of the indebtedness should be considered, *prima facie,* as so much money in his hands for the payment of debts and the purposes of distribution; and, therefore, when overdue indebtedness from himself to the intestate is thus inventoried by him, he should not be charged in his accounts with subsequently accruing interest.

*Appeal from the Greene Circuit Court.*

REVERSED AND REMANDED (*with directions*).

*C. W. Thrasher*, for appellant.

(1) The circuit court below had no jurisdiction of the subject-matter of voucher, number 4. The record shows no appeal was taken from any action of the probate court on said voucher. And if the circuit court had jurisdiction on the evidence it committed an error in disallowing said voucher. *Branson v. Branson*, 102 Mo. 613, 620. (2) The circuit court below committed error in charging said executor interest on assets of said deceased, in his hands during administration. R. S. 1879, sec. 99; *Eaton v. Walsh*, 42 Mo. 272, 275; *Ridgway v. Kerfoot*, 22 Mo. App. 661, 665; *Ipswich v. Story*, 5 Metc. 313; *Winship v. Bass*, 12 Mass. 199; *Myers v. Myers*, 98 Mo. 262, 267.

No brief for respondents.

THOMPSON, J.—The questions arising on this appeal grow out of the action of the circuit court in sustaining objections to the final settlement of appellant as executor of the estate of Henry C. Young, deceased, which objections were made by Belle Young, the widow, and Grabell and Robert Young, two of his heirs. The executor paid Henry C. Young, Jr., one of the children of the deceased and also a distributee under the will, the sum of $300, for which he claimed credit in the order of the distribution made on the final settlement. This money was paid without an order of distribution. The respondents objected to it.

The facts concerning the only other item of dispute may be thus stated: At the death of the testator the executor was indebted to him in the sum of $600 with

some accrued interest. . The indebtedness was then due, and was represented by two promissory notes bearing interest at the rate of ten per cent. per annum. The executor inventoried the notes *as notes*, and in his final settlement charged himself with the principal sum and interest thereon at the rate of ten per cent. to the date of the inventory, to-wit, April 6, 1886. The final settlement was approved by the probate court on August 31, 1889, and the respondents insisted that the executor should be charged with interest on the notes to that date. The probate court overruled both objections and approved the final settlement. On appeal to the circuit court both objections were sustained and the final settlement reconstructed in accordance therewith; and from that judgment the executor has appealed, and he insists that the judgment of the circuit court is wrong on both propositions. We will discuss the question of interest first.

Section 98, Revised Statutes, 1889, reads: "All debts due by an administrator to his testator or intestate shall be considered as assets in his hands." The succeeding section (99) reads: "If any person appoint his debtor executor of his will, such appointment shall not discharge the debt, but it shall be *assets* in his hands." At common law when a person voluntarily assumed the administration of an estate to which he was indebted, *prima facie*, the acceptance of the trust was considered as payment of the debt, and the administrator would be treated as holding the amount of the debt in trust for creditors and heirs. This rule is based on the principle that, where the same person is liable to pay money in one capacity and to account for it in another, the law will presume that he has done that which it was his duty to do, that is, paid the debt. *Winship v. Bass*, 12 Mass. 204; *Stevens v. Gaylord*, 11 Mass. 256; *Ipswich v. Story*, 5 Metc. (Mass.) 313. It was also a principle of that law that, where a testator in his will appointed his debtor as his executor, he thereby

forgave the debt so far as residuary legatees were con-
cerned. That principle does not seem to have been
recognized to any very great extent in this country, and
it has been abolished by statute in some of the states of
the Union.

That it was the intention of the two sections above
quoted to abrogate that rule admits of no doubt. As
was said by SHERWOOD, J., in *McCarty v. Frazer*, 62
Mo. 264, "the manifest object of these statutory pro-
visions is to reduce to the same plane all debts due the
estate, whether owing by the executor or any other
debtor." A majority of this court are also of opinion
that these statutes abolish the common-law rule that,
when an administrator takes charge of an estate, the
debts due by him to the estate, however evidenced, are
deemed to have been paid, and he is chargeable with
them in his trust capacity as for so much money. It is
undeniably logical that, if the statute leaves this prin-
ciple of the common law in operation, from the moment
that an executor or administrator takes charge of an
estate all that he owes to the estate in his individual
capacity, whether by bond, bill, note or otherwise,
becomes so much money in his hands belonging to the
estate, for which his sureties in his administration are
liable. This conclusion, which is undeniably logical,
has been more than once recognized in judicial deci-
sions. In *Simon v. Albright*, 12 Serg. & R. 429, it was
held that one administrator cannot sue his co-adminis-
trator on a bond given by the latter to the intestate in
his lifetime to secure a loan. The court, in the course
of its opinion, says: "The debt due from the defend-
ant was assets in his own hands, which, if not accounted
for according to law, his administration bond might
have been put in suit." Nor would it make any differ-
ence with the operation of this principle of the common
law whether the administrator or executor were solvent
or insolvent. This is shown by *Leland v. Felton*, 1
Allen (Mass.) 531, where it was held that debts due to

the estate of a testator from the executor named in his will, and from the firm of which executor is a member, are to be treated and accounted for as assets; and this, although he and his firm were insolvent at the time when he accepted the trust, and although he has not charged himself with such assets in his accounts, and although an account has been allowed by the probate court in which they are not included, but are mentioned merely as notes which it has been impossibe to collect; and notwithstanding the further fact that the executor has resigned his trust, and that an administrator *de bonis non* had been appointed in his place. But in *McCarty v. Frazer, supra,* the supreme court of this state held that, under the operation of our statute, debts due by the administrator to the intestate do not become moneyed assets by operation of law in such a sense as to make the sureties in his administration bond responsible for their proper administration. We agree with the Kansas City Court of Appeals as to the effect of that decision in the following passage from an opinion of that court by Judge ELLISON: "The effect of that decision is, that the mere fact of the administrator owing the debt to the estate does not make the debt actual money, but it remains a debt like any other, good or bad, as the case may be. And, being like any other debt, it must be inventoried and accounted for as other debts. Not to account for it in administration is a *devastavit,* and renders the administrator liable to the proceedings provided for in the sections of the statute above noticed" (referring to other sections of the statute). *Ridgway v. Kerfoot,* 22 Mo. App. 665. The just conclusion seems to be, that the operation of the statute is to prevent the assets being transmuted into money as soon as the administrator takes possession of the estate, but that it leaves them in his hands to be collected and accounted for exactly as any other assets. *McManus v. McDowell,* 11 Mo. App. 443. If, as in this case, the debt is evidenced by notes, the assets remain

in the form of such notes until the executor, by some unequivocal act, as by charging himself in his account with so much money, canceling the notes, or otherwise, expresses a plain intention of paying them. If they bear interest, the estate is entitled to that interest according to their tenor, until they are thus paid. In other words, the estate is entitled to it as long as the testator would have been entitled to it, had he lived. The mere fact of his having appointed the maker of his note as his executor does not change his contract with the latter; nor can the latter, by taking out letters testamentary on the estate of his creditor, diminish his own liability to that estate in the slightest degree, but the contract is to have its full legal effect, just as much as though it were the contract of some third person.

Nor is it perceived how such a question can be made to turn upon an inquiry into whether the executor was solvent or insolvent,—that is, insolvent in the sense of being unable to pay all his debts, or in the mercantile sense of being unable to pay his debts as fast as they mature, and yet solvent in the sense of being able to pay this particular debt. As the debtor has in this state the right to prefer his creditors, the only solvency, which in this relation could be made the subject of an inquiry, would be the solvency of the executor in the sense of his being able to pay this particular debt. To that extent the statement of SHAW, C. J., in *Kinney v. Ensign*, 18 Pick. (Mass.) 235, that, on technical ground as well as on considerations of policy, an administrator is not permitted to show that he could not collect a debt due from himself holds good, even under the rule established in *McCarty v. Frazer, supra*.

A majority of the court are, then, of opinion that the word "assets" in the above statute is not equivalent in value or meaning to the word money. An executor, who owes money to the estate of the decedent on overdue notes, may inventory them as money. By so doing he at once charges his sureties with so much

money on hand, and his subsequent insolvency does not relieve them; nor does his insolvency at the time when he made the inventory, unless it amounts to a total inability to pay, because even an insolvent debtor may pay his debts. But if he inventories them as notes, as the executor did in the present case, he is responsible and remains responsible on them as notes. The character of the assets is not changed by the appointment of the debtor as executor.

This also seems the view most beneficial to the estate. The right of the executor to get credit for uncollectable assets does not depend upon the fact whether or not the debtors are insolvent; but it depends upon the fact whether he could have collected the assets by using such diligence as the law imposes upon a trustee. *Williams v. Petticrew*, 62 Mo. 471. Now, it will not be contended that, when an executor was a debtor of the estate on an overdue obligation, and was solvent at the date of filing his inventory, he could not have collected that debt from himself. It then becomes his duty to pay it, if he can pay it, and his subsequent insolvency cuts no figure in the case. The case of *McCarty v. Frazer*, *supra*, has reference to a state of facts, where the debts are worthless as assets at the date of filing the inventory.

We have been referred to several decisions, as having a bearing upon this question, but none of them are directly authoritative. The case of *Eichelberger v. Morris*, 6 Watts (Pa.) 42, decided the question under the rule of the common law. In *Kinney v. Ensign*, 18 Pick. (Mass.) 232, the common-law principle was stated by Chief Justice SHAW; but the court refused to apply the principle so as to prevent an administrator from exercising his right to redeem a mortgage for the estate. In several decisions of the court of appeals of New York, which have fallen under our notice (*Soverhill v. Suydam*, 59 N. Y. 140; *Baucus v. Stover*, 89 N. Y. 1, *Re Consalus*, 95 N. Y. 341), the question arose under

the following statute of that state: "The naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased in the inventory, and such executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due, and he shall apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal estate of deceased." A statute so explicit in its terms left no room for judicial construction, and the decisions under it are hence inapplicable to the question before us.

The conclusion of a majority of the court, then, is that the circuit court committed no error in charging the executor with interest, according to the tenor of the notes, down to the time of his final settlement. But in this conclusion Judge BIGGS does not concur.

But on the other question presented for decision all the members of this court are agreed. The facts bearing upon this exception may be stated as follows: The deceased left surviving him a widow and four sons. The will provided that, after the payment of a certain legacy, and after two of the sons, who were then minors, had been educated out of the general estate, the residue of the estate was to be divided equally among the four sons. This disposition of the estate was made subject to the dower interest of the widow. It was also stated in the will that Charles Graham Young, one of the sons, had received the sum of $300 as an advancement, and it was provided by the testator that this amount should be charged to Charles in the distribution of the estate. Belle Young, the widow, was guardian of Grabell Young, who was at the time a minor. On her petition the probate court ordered the appellant to pay to her, as guardian of Grabell Young, the sum of $675 for the support of her ward, to be

charged against him as so much paid on distribution; which was accordingly paid, and for which the appellant received a credit in his final settlement. Previous to the final settlement the executor had paid the following amounts without any order of distribution, to-wit, Belle Young, $300; Robert Young, $200, and Henry C. Young, Jr., $300. After deducting the amounts paid to the widow and Robert from the balance, as shown in the final settlement, there remained the sum of $499, and in the distribution of this the appellant claimed the right to deduct the amount paid Henry C. Young, Jr. The probate court allowed the credit, but it was disallowed by the circuit court.

Under the record, as presented to this court, we are at a loss to know upon what principle this credit was rejected. Graham Young had no interest in the distribution, because he had been fully advanced. Belle Young was entitled to a child's part of the personalty, and she had been paid $300. Under the orders of the probate court Graham Young was paid largely in excess of $300, which must be regarded as so much distributed to him. The executor had paid Robert Young $200 on his distributive share, and, therefore, it only required $100 to make him equal to the other heirs. The final settlement as presented showed an actual balance in the hands of the executor of $199, which amount was more than sufficient to make Robert equal with the other distributees except Grabell. The excess paid Grabell resulted from the orders of the probate court, and we are not disposed to impose any penalty on the executor for obeying them. The mere fact that the money was paid to Henry C., without first obtaining an order of distribution, could not affect the question on the merits, because, if nothing had been paid Henry C., he would have been entitled to an order of distribution in his favor for at least $300. Hence, we conclude that the judgment of the circuit court on this question was erroneous.

The judgment of the circuit court will, therefore, be reversed, and the cause remanded, with directions to render a judgment in accordance with this opinion, and. that such judgment be certified to the probate court. for its guidance in the final distribution of the estate. Judge ROMBAUER concurs. Judge BIGGS concurs as to the second question, but dissents as to the first.


BIGGS, J. (*dissenting*).—I have been unable to agree with my associates concerning the first proposition discussed and decided in the opinion. I think that the qualification of Mr. Thrasher as executor, and the recognition by him of his debt to the testator by entering the notes on the inventory, must, under this record, be treated as absolute payment of the notes at the date of the inventory. This would stop all interest on the notes as such, and, if the executor ought thereafter to be charged with interest on the amount, it would have to be done on grounds other than that of a continuation of the original indebtedness. Any other view of the law would, in my opinion, lead to complications and legal absurdities. At common law the nomination by a testator of his debtor as executor extinguished the debt. The reason was that an executor could not sue himself, and the right of action having been suspended by the voluntary act of the creditor, it was gone forever, except as to the creditors of the testator. Out of the hardship or injustice of this rule sprang. the equity doctrine, which declared such indebtedness to be assets in the hands of the executor and constituted him a trustee for the beneficiaries under the will. Dealing further with the question as a practical one, courts of equity, recognizing the legal difficulties which would arise if such debts were treated as ordinary demands, declared that the acceptance of the trust must be treated as payment of such debts, invoking the principle, that, when the same person is to pay and also receive a debt,

equity will presume that "what is required to be done,—
that is payment,—shall be deemed to be done." Our
statute ( R. S. 1889, sec. 99 ) is but the enactment of
the equity rule, and in its enforcement the principles
applicable to the equity rule must of necessity be
invoked. My associates deny this, and, under the
authority of *McCarty v. Frazer*, 62 Mo. 263, they hold
that a proper interpretation of the statute places such
debts on the " *same plane* " with other debts. As I have
said, this construction is likely to lead to vexing compli-
cations in the administration of estates. For instance,
the rule is that the sureties on an executor's bond can
only be held for the failure of their principal to collect
ordinary demands, when it appears that the executor
failed to exercise ordinary diligence in the premises.
How could this rule be applied to the executor's indi-
vidual debt to the estate? Again, when may the pro-
bate court, for the purposes of distribution, treat such
a debt as paid? Under the majority opinion in this
case, this could not be done until the executor had
signified by some overt act, such as charging the debt
in his probate account, that it had actually been paid.
The executor could decline to do this until the final
settlement was reached, and the probate court would be
powerless. Again, if the executor should resign, or be
removed without accounting for the debt, would his
successor be compelled to collect the debt like other
demands remaining unadministered? Or if the executor
should die, would such a demand have to be allowed
against his estate? These questions to my mind present
practical difficulties in the settlement of estates, and
they would. be avoided, if the acceptance of the trust
and the recognition of the debt by the executor be
treated as payment in all contests between the executor
and those directly interested in the estate.

In the *McCarty case*, which was a contest between
the administrator *de bonis non* and the sureties on the
bond of the original executor, whose letters had been

revoked, the supreme court held that our statute, making the debts of executors to their testator assets, ought not to be so construed as to make the sureties on an executor's bond responsible for the debt of their insolvent principal. To avoid this result, the court decided that the liability of a surety as to such a debt must be determined by the same rules and tests, applicable to ordinary demands. That was the only question in judgment, and I have no fault to find with the conclusion reached. Under the facts it was in conformity with equity rules. This will clearly appear from the reasoning of the supreme court of Massachusetts in the case of *Kinney v. Ensign*, 18 Pick. 232. The court in discussing this question said: "On technical grounds, as well as on considerations of policy, an administrator is not permitted to show that he could not collect a debt due from himself. But this is in the nature of an estoppel, and it is a well-settled rule of strict law, that although a party is bound by an estoppel, as of a fact proved or admitted, yet it shall not be taken as a substantial fact from which other facts can be inferred. *Monumoi v. Rogers*, 1 Mass. 159. So, in pleading, a party is held to admit all facts not traversed, but it is only for the determination of the issue in which such pleadings terminate. Such admission cannot be used elsewhere as a fact from which other facts may be inferred. Or, the holding the fact of a debtor taking administration upon the estate of his creditor to be a payment, may be deemed a legal fiction, adopted for purposes of justice and convenience, as well as from considerations of policy, and calculated generally to promote justice; *but such a legal fiction will never be allowed to go so far as to work wrong or injustice.*" So in the *McCarty case* the innocent sureties ought not to have been made responsible for the worthless debt of their principal, which would have been a wrong and injustice to them. But in the case at bar the facts are entirely different.

The contest is between the executor and the legatees, and there is no controversy concerning the solvency of the executor or the validity of the debt. In my opinion the rule ought to prevail that, whenever an executor admits the validity of a debt by entering it on the inventory, the amount of such indebtedness must be considered, *prima facie*, as so much money in his hands, for the payment of debts and the purposes of distribution. If, however, it is made to appear that the executor was insolvent at the time letters were granted, and it is necessary to the protection of the sureties on his official bond, or to prevent other injustice or wrong, such debt ought to be treated as an ordinary demand. *Kenney v. Ensign*, 18 Pick. 232 ; *Ipswich Mfg. Co. v. Story*, 5 Metc. 310. Under this view Mr. Thrasher's notes must be regarded as paid at the date of the inventory, and, therefore, the circuit court committed error in compelling him to charge himself with interest on the notes as such, after that date.

ROMBAUER, P. J. ( *concurring* ).—I concur in the opinion, because the conclusions therein reached are unavoidable under the construction placed upon the statute by the supreme court in *McCarty v. Frazer*, 62 Mo. 263, which must control our decision. It was there held that the statutory provision, which made debts due from an executor assets in his hands, did not mean cash assets, but that such assets, notwithstanding the appointment, retained their original character until converted into cash. It is an unavoidable logical sequence, that the equity which is injected into the statute by that decision works both ways. If it is an equity in favor of the executor and his sureties, it is necessarily one in favor of the estate as against them. The character of the trust funds is fixed, and cannot, on any principle known to the law, shift between parties standing in the same relation according to whether it is one or the other who asserts the equity.

As in this case there is no evidence whatever that the debt owing by the executor was converted into cash at any given date, and he is and always was solvent, he necessarily remains liable for the original debt with all its incidents to the date of accounting.