In Re Voluntary Assignment of EXCELSIOR MANUFACTURING COMPANY, CHARLES H. FILLEY and JOHN D. FILLEY, Assignees et al., Appellants, v. ASSIGNED ESTATE.

Division One, June 29, 1901.

1. **Assignment: WAGES: SPECIAL CHARTER: GENERAL LAW.** The special charter incorporating a company provided that in case said company at any time fail or suspend its business, all debts due as wages to laborers shall be taken as preferred claims, and shall first be paid out of the assets of said company. The general law in force at the time of the assignment required corporations to make payment to their employees of wages, not exceeding one hundred dollars, due for all labor performed by them within three months next preceding a demand made therefor, in preference to any other claim or debt not secured by special lien. *Held*, that, reading the special charter and general law together, an employee of the company was entitled to priority of payment of all wages due him at

In Re Excelsior Mfg. Co. Assignment.

the time of the assignment, without limitation as to the amount due or when earned.

2. ———: ———: INDEBTEDNESS: SET OFF. The assignee can not pay the demand of one who is indebted to the estate until such debt be paid, whether the claimant's demand be for labor performed or otherwise. So long as the debt due the estate remains unpaid the assignee must set off his allowance against his debt; and if the assignee neglects to do this he is chargeable in his final settlement with the amount thus lost to the estate.

3. ———: SET OFF: DIVIDENDS. Where the claimant against the assigned estate is indebted thereto, the one claim should be set off against the other, and if the assignee fail to set off the estate's demand against that of the creditor, he is chargeable in the final settlement, not only with the amount of the estate's demand against the claimant, but also with any dividend paid him to which he would not have been entitled had the proper set off been made. The law in this regard is the same as that governing administrators and receivers.

4. ———: ———: TWO ASSIGNEES: INDEBTEDNESS OF ONE. Where there are two assignees, and one of them is indebted to the estate, and his commissions are not set off against his indebtedness, it is error, in the final settlement, to charge the whole of his indebtedness against the assignees. From his indebtedness should be deducted his share of the commissions, and then if it appear that the balance can be or could have been collected from him, and was not, the amount thus lost to the estate should be charged against both assignees.

5. ———: ———: ASSIGNEE'S INDEBTEDNESS: TRIAL BY JURY. The court had no authority, under a mere rule upon the assignees to show cause why the alleged indebtedness of one of them should not be charged against them, to enter summary judgment for the amount of the debt. If such indebtedness is denied, the assignee is entitled to a trial by jury on the question of his liability. Nor does their failure, in their return to such rule, to state the facts on which his liability or non-liability depends, give the court jurisdiction to try the question of his liability in a summary order. In such case a suitable assignee should be appointed for the purpose of establishing the claim and directed to sue the indebted assignee thereon.

6. ———: ———: ———: DISCHARGE. The appointment of one as assignee does not discharge the debt he owes the estate, nor does

it make that debt cash in his hands. The debt simply becomes an asset.

7. ———: ALLOWANCE OF CLAIMS: POWER OF COURT. Without the approval of the court, the assignee's acts in allowing a claim do not become consummate or complete. But the court has the authority, of its own motion, at a subsequent term, and after the claim has been sold as "bad debts" and such sale approved, and even where such allowance or approval has not been excepted to or appealed from, to set aside such allowance, at any time during the course of the administration of the estate. And if the assignee, without taking or following the directions of the court, has wrongfully allowed a claim against the estate without having set off against such claim the claimant's indebtedness thereto, the court may subsequently correct the assignee's action in that regard, and charge him with whatever loss the estate has thereby sustained.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*Johnson & Richards* for Chas. H. and Jno. D. Filley, assignees, appellants.

(1) The trial court erred in making the order charging the assignees with the amount of the note of C. H. Filley ($3,292) as for so much cash in their hands belonging to the assigned estate; for the reasons, to-wit: (a) There is no provision of the statute, regulating voluntary assignments for the benefit of creditors, which gave the court power to do so. Chap. 8, R. S. 1889; sec. 98, R. S. 1889; sec. 98, R. S. 1899; McCarty v. Frazer, 62 Mo. 263. (b) The order is in effect a judgment rendered against the assignees, without suit and without their having an opportunity to defend against the cause of action on which it is based, while it deprives them of their property without due process of law. In this respect

it is violative of both the State and Federal Constitution. Secs. 28, 30, art. 11, Mo. Const.; sec. 1, art. 14, U. S. Const.; Railroad v. Nebraska, 164 U. S. 403. (c) The amount of the note was not chargeable against J. D. Filley, even if it had been against his co-assignee, alone. (2) The trial court also erred in charging the assignees with $145.06, paid to C. H. Filley, and $228.17, paid to R. E. Filley, for wages as employees of the assigned company. (a) These payments were made by the assignees in good faith, in conformity with an order of the court entered at a previous term, and the court had no jurisdiction to revoke that order after the lapse of the term at which the order was made and the moneys paid, and surcharge the assignees' account therewith. Sec. 2538, R. S. 1889, as amended by Laws 1895, p. 101; sec. 1006, R. S. 1899; Laws 1863, p. 179, sec. 8. (b) Said sums having been reported by the assignees in previous term reports, said term reports having been duly allowed and approved by the court without any creditor or other person interested in the assigned estate having made objection thereto, the court afterwards had no jurisdiction on its own motion to charge the assignees therewith. Secs. 439, 440, R. S. 1889. (3) The trial court erred in charging the assignees with $348.46 paid to George D. Dana as and for dividends on demands allowed in his favor against the assigned estate. (a) The demand on account of which that payment was made was in the nature of a judgment that the assignees were in duty bound to pay equally with the other allowed demands. Secs. 446 and 457, R. S. 1889; Eppright v. Kauffman, 90 Mo. 25; Nanson v. Jacobs, 93 Mo. 332; State, etc., v. Cornice, 62 Mo. App. 569. (b) The allowance of that demand by the assignees was a judicial act. (c) It does not appear whether or not the note made by Mr. Dana was considered as a set-off against the demand, when the latter

was allowed in his favor; but the presumption is the assignees acted in good faith in allowing the demand and paying the dividends thereon, and are not therefore chargeable with the latter.    Melick v. Voorhis, 24 N. J. (Eq.) 305; Higgins v. Whitson, 20 Barb. 141; 27 Am. and Eng. Ency. of Law, 192. (d)    This part of the order of the trial court is predicated upon the presumption by the court that the note of Dana, held by the assignees, was a valid subsisting indebtedness from him to the assigned estate, and the effect of the order was to deny to the assignees and to Dana a trial of that question and to deprive them of their property without due process of law. (e)    The trial court had no jurisdiction, on its own motion, or without objections or exception of creditors or others interested in the estate, to charge the assignees with said sum. Secs. 461, 462, 463, R. S. 1889; secs. 439, 440, R. S. 1889. (4)    If the assignees failed to discharge their duties as such, with respect to the collection of said note of C. H. Filley or the said several payments, then they are answerable on their bond at the suit of the creditors—in which suit the matters can be properly adjudicated, and are not subject to summary order of the circuit court in the assignment proceedings.    Secs. 432, 433 and 438, R. S. 1889.    (5)    The trial court failed to exercise a wise discretion in disapproving the assignees' report of sale, and the sale of "bad or doubtful debts," on its own motion and without reasonable cause.    Sec. 465, R. S. 1889; Hewitt v. Weatherby, 57 Mo. 279; Jones v. Manly, 58 Mo. 559; Evans v. Robberson, 92 Mo. 192.    Mere inadequacy of consideration is not of itself sufficient to justify the setting aside of a sale of that kind.    Briant v. Jackson, 99 Mo. 585; Gordon v. O'Neil, 96 Mo. 350; Walters v. Hermann, 99 Mo. 529; Knoop v. Kelsey, 121 Mo. 642; Rodgers v. Cleveland, 132 Mo. 442; Donham v. Hoover, 135 Mo. 210; Goode v.

Crow, 51 Mo. 214; Holden v. Vaughn, 64 Mo. 590; Phillips v. Stewart, 59 Mo. 491.

*Jos. S. Laurie* for Brauer and Low, appellants.

The act or ruling of the circuit court in setting aside or disapproving the assignees' sale of bad debts was an abuse of discretion, and as such is reviewable on appeal by the aggrieved purchasers. It is true that the statute under which said sale was had (R. S. 1889, sec. 364) invests the court with discretionary power to approve or reject the same when reported, but this implies a judicial discretion and not an arbitrary exercise of will on the part of the court. "It does not mean a wild self-willfulness which may prompt to any and every act" (Faber v. Bruner, 13 Mo. 541); but "an act of judgment deciding what equity and justice requires upon a given state of facts." 2 Ency. Pl. and Prac., 415. "Accordingly, where the power is so exercised as to deprive a party of a legal right, or unduly benefit one party at the expense of the other, or where generally the justice or inexpediency of the act is so clear as to show beyond a reasonable doubt the violation of equitable considerations, the act of decision is always reviewable, in some form on an appeal, as an abuse of power." Carr v. Dawes, 46 Mo. App. 599, citing decisions of the Supreme Court. "The erroneous exercise of judicial discretion is reviewable by an appellate court." In re Wilson, 95 Mo. 184; Eidemiller v. Kump, 61 Mo. 340; Hanel v. Freund, 17 Mo. App. 618. The sale as made was orderly in every respect, beginning strictly in accordance with the direction of the court; the purchasers fully complied with all conditions imposed, and the creditors, with notice of the sale and all its particulars, silently approved the same by failure to object. Under

such circumstances, it is remarkable that the court authorizing the sale, should see fit, *ex mero motu* to interfere.

*Henry H. Denison* for respondent.

(1) There was no abuse of the discretion of the court in refusing to confirm the sales to Brauer and Low, respectively, of what the assignees have chosen to designate as bad debts. (2) It was the duty of the assignees to make the set-offs recommended by the special commissioner without any suggestion by the commissioner or direction by the court. State to use v. Rowse, 49 Mo. 593; Peet v. Spencer, 90 Mo. 384; Huse v. Ames, 104 Mo. 91; Smith v. Spengler, 83 Mo. 408; City of Kansas v. Ridenour, 84 Mo. 253; Morrow's Assignees v. Bright, 20 Mo. 298; Green, Assignee, v. Conrad, 114 Mo. 651; Rubey v. Watson, 22 Mo. App. 434; Chenault v. Bush, 84 Ken. 536; Scammon v. Kimball, 93 U. S. 362; Jones v. Receiver Hollister Bank, 26 Barb. 310; Holbrook v. Receivers Am. Ins. Co., 6 Paige, 220. (3) The court has full power to compel the assignees to do their duty. *Vide* authorities cited to point 2; also Assignment Law of Missouri, *passim*. (4) Term settlements are not judgments which conclude, but are open to be surcharged, falsified, and corrected, and merged in the final settlement. 2 Woerner on Administration, sec. 504; State v. Roeper, 9 Mo. App. 21; s. c., 82 Mo. 57. (5) An assignee has no right of appeal from an order of distribution. Appeal of Jordan and Porter, 107 Pa. St. 75.

MARSHALL, J.—On February 6, 1896, the Excelsior Manufacturing Company made a voluntary assignment, under the statutes of the State, for the benefit of all its creditors. Charles H. and John D. Filley were made the assignees. The

company owed a number of employees for wages earned within the three months next preceding the assignment, and on the eighteenth of February, 1896, the circuit court made an order directing the assignees to pay these claims in full, which was done. Among such claims were the claims of R. E. Filley, for $228.17, and of Charles H. Filley, for $145.06. These payments were predicated upon section 8 of the act incorporating the company (Laws 1863, p. 179) and upon section 2538, Revised Statutes 1889, as amended by the Act of 1895 (Laws 1895, p. 101), which creates a preference in favor of employees for wages earned within the three months next preceding the assignment.

Among the assets inventoried were, first, a note of Charles H. Filley, for $3,292; second, a note of R. E. Filley, for $3,457; and, third, three notes of Geo. B. Dana, for $506.96, dated May 11, 1889, $500, dated November 19, 1891, and $3,184, dated August 8, 1894, respectively, and an open account against Dana for $166.50. The assignees allowed, in favor of said Dana, a claim for $5,095.81, but did not set off against this allowance the notes and open account due by Dana to the company. In the course of administration the assignees paid Dana two dividends, of $203.83 and $152.87, respectively.

The assignees took credit in their term reports, for $5,407.18 on account of commissions for services. The requisite term reports, showing these facts, were filed, notice given, and, no exceptions being filed, they were approved by the court.

On the eighteenth of June, 1897, the assignees made a final report and asked leave to sell the "bad or doubtful debts," and made an application for a discharge. The court ordered the "bad or doubtful debts" to be sold, including the notes of Charles H. and R. E. Filley and the notes and account against

Dana, aforesaid. Appellant Brauer became the purchaser of the Filley notes for $205, and appellant Low became the purchaser of the Dana notes and account for $25. The court then referred the matter of the whole administration to a special commissioner, who in due time reported that the assignees had on hand a cash balance of $4,257.28, and further recommended that the assignees be charged with the $348.46 dividends paid to Dana, and with the $228.17 paid to Robert E. Filley, and the $145.06 to Charles H. Filley as wages, aggregating in all, $721.69, and also reported that the notes and account against Dana were not set off against the claim allowed in his favor against the assigned estate.

Thereupon, the court disapproved the sale of the "bad or doubtful debts," and of its own motion entered an order on the assignees to show cause, on a day named, why they should not charge themselves with the following amounts:

| | | |
|---|---|---|
| 1. | The note of Charles H. Filley for. . | $3,292.00 |
| 2. | The wages paid Charles H. Filley. . | 145.02 |
| 3. | The dividends paid Geo. D. Dana. . | 348.46 |
| 4. | The wages paid Robert E. Filley. . . | 228.17 |

Total .... .... ............ ....$4,013.65

The subsequent proceedings are thus stated by the counsel for assignees-appellants, and not controverted by the respondent, and are therefore adopted here:

"The assignees filed a return to the order to show cause, in which they averred, in substance, that Charles H. Filley was not legally liable on said note for $3,292, but if he was liable, the assignees were not chargeable with the amount of the same in the proceeding, and that the court had no jurisdiction to try and determine the question whether said Filley was

so indebted to the assigned estate, or to charge the assignees with the said sum as so much cash in their hands. Also that the $145.06 paid to Charles H. Filley and $228.17 paid to R. E. Filley were paid on preferred demands, pursuant to an order of the court therefor; that the sum of $348.86, paid to George D. Dana, was paid on a demand for $5,095.81, duly allowed by the assignees in his favor. Also, that the circuit court had no jurisdiction in that proceeding to try and deter-. mine those matters and questions, or to charge the assignees with said several sums as so much cash in hand; that such payments were, as made, reported by the assignees to the court in their term reports and final petition for discharge duly filed, notices of which were duly published, all as required by statute; that no creditor or other interested party filed any exceptions to such reports and petition nor were then excepting or asking that the assignees be charged with either of said sums.

"The court, of its own motion set the rule to show cause down for hearing, and, on December 22, 1898, called the same for trial. The court said:

" 'I will consider in evidence in the matter, the inventory of the assignees, and the deed of assignment and the petition for discharge of the assignees, and the report of the special commissioner, as well as the application for an order to sell the bad or doubtful debts, and the list of articles ordered to be sold in the order of sale; and if there are any other matters in the matter that have already been filed, that may be necessary to be referred to, they may be considered in evidence.'

"Thereupon, the assignees' attorney objected to the court considering anything in evidence, on the ground that the proceeding was in the nature of a trial over which the court had no jurisdiction, and the inventory and other documents re-

ferred to were irrelevant and immaterial. The matter was then taken under advisement by the court.

"On the twenty-seventh of December, 1898, the court entered an order or judgment against the assignees under the rule to show cause, as follows:

" 'Now at this date the order to show cause entered herein on December 5, 1898, coming on to be heard, come the assignees, Charles H. Filley and John D. Filley, by attorney, and submit same to the court upon their return filed herein on December 15, 1898; and the court having duly considered said return and the evidence adduced, and being now fully advised in the premises, doth order that said assignees, Charles H. Filley and John D. Filley, charge themselves with the following amounts, to-wit:

" 'First:    The sum of $3,292, and to deliver to Charles H. Filley his note for that amount.

" 'Second:    The sum of $145.06, the amount paid to Charles H. Filley (one of the assignees) when he was at that time indebted to the estate.

" 'Third:    The sum of $348.46, being the amount paid by assignees to George D. Dana in dividends, when he was at the time indebted to the estate.

" 'Fourth:    The sum of $228.17, being the amount paid to R. E. Filley, when he was at that time indebted to the estate.'

"To this action of the court the assignees then and there duly saved their exceptions.

"On January 9, 1899, the assignees filed their motion to set aside said order or judgment, assigning as grounds for the same that the court had no jurisdiction to make such order; that said order was based upon the assignees' application or petition for final discharge from their trust, notice of which had been duly advertised and the same duly filed as required

by the statute, and no person interested in the assignment had filed written or other objections to said application or to the discharge of the assignees within the time prescribed by statute. That the assignees were not chargeable in that proceeding with the several sums ordered to be charged against them in said order. That 'said order is violative of sections 28 and 30, article 2, of the Constitution of Missouri; and section 1 of the fourteenth amendment to the Constitution of the United States, in this, that it deprives, or seeks to deprive, these assignees of their right of trial by jury, and of their property without due process of law, and denies to them the equal protection of the law.'

"On December 27, 1898, the court also made an order 'that the assignees herein, within ten days from this date, declare and pay one per cent dividend on all allowed claims of the assigned estate,' and the assignees duly excepted to the court's action in that behalf.

"On January 9, 1899, the assignees filed their motion to revoke or set aside the order to pay one per cent dividend, assigning as ground therefor that the court has no power or jurisdiction to make an oder to pay a dividend on the demands allowed, after the payment of the first dividend on such demands, of less than five per cent otherwise than when an order is made finally winding up said estate and discharging said assignees.'

"On January 9, 1899, the assignees also filed a motion to set aside the order disapproving the assignees' report of sale of 'all bad or doubtful debts,' etc., assigning as reason that the order for the sale had been duly made in conformity with the provisions of section 465, Revised Statutes 1889; that no creditor had appeared and filed objections thereto, and that in the absence of such appearance and objection by a creditor, the court had no jurisdiction to disapprove said report and

sale; that the court failed to exercise reasonable discretion in refusing to approve said report of sale, and that there was no evidence before the court which authorized or justified its making said order disapproving said report of sale.

"On January 16, 1899, the court overruled said several motions. The assignees duly saved their exceptions to the court's action in that behalf, and thereafter brought the cause to this court by appeal."

Brauer and Low, purchasers of the uncollectible accounts, also appealed from the order disapproving the sale to them.

## I.

No reason has been given by counsel, and we can conceive of none, to show any error in the order of the trial court charging the assignees with $228.17, wages paid to Robert E. Filley. The company was created by a special act of the Legislature in 1863 (Laws 1863, p. 179). The eighth section of that act provided: "That in case said company shall at any time fail or suspend its business, all debts due to laborers or for labor done for said company in carrying on and conducting its business, shall be taken and considered as preferred claims against said company, and shall be first paid out of the assets of said company."

Section 2538, Revised Statutes 1889, as amended by the act of 1895 (Laws 1895, p. 101) provides that all corporations shall pay their employees wages due for services not exceeding one hundred dollars rendered within the three preceding months, in preference to any other claim not secured by specific liens on the property, and that, "all debts due employees or operatives for wages of their labor shall have priority of payment from the money and assets of the corporations in the hands of officers or agents, or any receiver or assignee,

over every other claim not specifically secured. Every corporation, officer, agent, receiver, assignee or person holding money or assets, refusing to recognize the priority of employees' claims, shall be liable to such employees for the amount of all loss and damages occasioned by his unlawfully withholding the money."

The provisions of the general statute have been properly construed by the St. Louis Court of Appeals in the case of In re Assignment Sectional Dock Co., 80 Mo. App. l. c. 61, to entitle the employee of an assigned corporation to a priority for unpaid wages earned within three months next preceding the date of the assignment, and it was there said: "Therefore, in administering the assets of an insolvent corporation, the duty of the assignee as to such claims is unmistakable. There is no room to question the right of preference as to them. Neither is the right of preference questionable as to past due wages whenever earned, provided the right of the laborer to the preference has been fixed or completed," that is, if a proper demand, at the proper time, is made for them, and the right is held to be fixed and complete by the act of "bankruptcy" or rather assignment.

Under the general law, therefore, Robert E. Filley was entitled to his wages, not exceeding one hundred dollars, if earned within three months preceding a demand therefor or preceding the assignment. Under the special act creating this corporation there is no limitation as to the amount of wages due or as to when earned, so that Robert E. Filley was clearly entitled to the wages paid him. But he was indebted to the company in the sum of $3,457, and there is no theory of law, therefore, upon which he could be allowed to receive what the company owed him while he was indebted to the company. The fact that he had preference as to wages, only relates to his rights as against other creditors, and does not bear upon his

status as to his relations toward the company. As between him and the company he was not of right a creditor, preferred or otherwise, of the company, for he owed the company more than the company owed him, so that the one should have been set off against the other. The assignees were at fault in not so doing, and in not disclosing the facts to the court. The court properly charged them with the amount paid him under these circumstances.

## II.

At the date of the assignment, George D. Dana owed the company three notes and an open account, aggregating, with interest figured on the notes at six per cent, $5,709.06. He held a claim against the company for $5,095.81. The assignees allowed his claim without setting off against it what he owed the company, which if set off would have wiped out his claim and left him indebted to the company in the sum of $613.25. This was error. If the assignees had sued him to recover what he owed the company he would have been entitled to set off what the assignor owed him. [Smith v. Spengler, 83 Mo. 408; Green v. Conrad, 114 Mo. 651.] The assignees had the same right of set off against him, and it was their duty to set off what he owed the company against what the company owed him. For otherwise the funds properly applicable to the payment of other creditors would be diminished *pro tanto*. There is no difference in this regard between assignees and executors, administrators or receivers, and the latter have uniformly been charged with the duty of setting off claims in favor of their estates against demands asserted against their estates. [In re Estate of Geo. H. Lietman v. Lietman, 149 Mo. 112; Woerner's Am. Law of Admr. (2 Ed.), secs. 564, 398; Waterman on Set-Off (2 Ed.), secs. 209-297.]

The assignees paid Dana dividends amounting to $348.46 on his allowed claim for $5,095.81.   If the claim of the estate had been set off, as it should have been, against the Dana claim, as shown, Dana would have been indebted to the estate, and, hence, would not have been entitled to any dividend. The failure to set off, and the payment to Dana of the $348.46, diminished, by that amount, the funds that would otherwise have been paid to the other creditors.   This loss to them is a loss to the estate, and the court properly charged that sum against the assignees in their final settlement.

### III.

At the time of the assignment, Charles H. Filley, one of the assignees herein, owed the company a note for $3,292, dated August 8, 1894, which with six per cent interest aggregated $3,588.28.   The assignees paid said Filley $145.06 wages due him at the date of the assignment, and the assignees took credit in their term settlements for $5,407.18, on account of their services, and one-half thereof amounting to $2,703.59 went to Charles H. Filley.   Thus Charles H. Filley received from the assigned estate $2,848.65, when he was indebted to the estate in the sum of $3,588.28.   The trial court charged against both assignees the $145.06 so paid Charles H. Filley as wages, and the face of the note, $3,292, that Charles H. Filley owed the estate.

This is assigned as error, and it was insisted in the trial court that it was improper to charge said amounts against John D. Filley at all, and that the court had no power to summarily enter a judgment on the note against Charles H. Filley, for he was entitled to a trial by jury on the question of his liability on that note, under sections 28 and 30 of article 2 of the Constitution of Missouri, and under section 1

of the fourteenth amendment to the Constitution of the United States, and the protection of those constitutional guarantees having been denied by the trial court, the assignees invoke the aid of this court in that regard.

There can be no doubt that the trial court erred in thus summarily determining the liability of Charles H. Filley on said note, nor can it be successfully denied that he was entitled to a jury trial as to his liability thereon.

Under a mere rule to show cause why they should not be charged with these amounts as cash in their hands, the court entered judgment against both assignees for the full amount thereof. The extent of the liability of John D. Filley could in no event be more than the sum that was lost to the estate by his failure to withhold the wages and commissions paid to Charles H. Filley and to apply the same to the payment of the Charles H. Filley note, and his failure to collect the balance of the note after deducting these amounts, if that balance was collectible. The total amount so charged by the court against the assignees was $3,437.06, while the total amount paid by the assignees to Charles H. Filley was $2,848.65, which was $588.41, less than the amount charged against the assignees. So that, without any proof that the difference, between the amount Filley owed the company and the amount of wages and commissions he received, could have been collected from Charles H. Filley, the court entered judgment against both of the assignees for that difference. Upon no principle or theory could this judgment be sustained as to John D. Filley.

It is true, that in the return to the order to show cause the assignees only set up that they had been "advised" that Charles H. Filley was not legally liable on said note. This is not a material or traversable issue. The question is, whether in fact he is liable, not what the assignees were "advised." But this failure to state the facts upon which his liability or

non-liability depended, did not give the court the right to enter the judgment it did, for the court had no jurisdiction to try the question of his liability in a summary order to show cause. The court should have ,appointed John D. Filley, or some other suitable person as temporary sole assignee for the purpose and have directed him to sue Charles H. Filley on the note, and in the meantime, and until the termination of that suit, should have withheld its approval of the assignees' accounts and thereby have kept the wages and commissions that Charles H. Filley had taken credit for under the control of the court so as to apply the same to the payment of the judgment in favor of the estate and against said Charles H. Filley, if such a judgment was obtained. This the court had power to do, but this was the extent of the power of the court as to the note. If the amount so retained did not extinguish the judgment so obtained, then the court had further power to charge against John D. Filley any further amount, if any, that was lost to the estate by his neglect to collect the note, if it was collectible.

It goes without saying that Charles H. Filley is not entitled to receive from the assigned estate the wages and commissions while he is indebted to the estate, but that the one should be set off against the other. If he was not willing to have this done he could have prevented it, as to the commissions, by refusing to act as assignee. His appointment as assignee did not discharge the debt he owed the assigned estate nor did it make that debt cash in the hands of the assignee. [McCarty v. Frazer, 62 Mo. 263.] The debt became assets in the hands of the assignees, but not cash. There is no difference in this regard between an assignee and an administrator, and such is the law as to administrators. [R. S. 1899, sec. 98 and 99; Young v. Thrasher, 48 Mo. App. 327.]

## IV.

It is argued, however, that in the allowance of the claim to Dana without setting off Dana's indebtedness to the estate the assignees acted in a judicial capacity, and inasmuch as no appeal was taken from their judgment, it is final, and at any rate the court has no power, *ex mero motu,* to review or set aside their action in this respect.

It is true, that in allowing and adjusting claims against the assigned estate, an assignee acts judicially and his acts have the attributes of judgments, and any one dissatisfied with his ruling must appeal, in the manner prescribed, to the circuit court. [Eppright v. Kauffman, 90 Mo. 25; Nanson v. Jacob, 93 Mo. 331.] But while this is true as between the creditors and the assigned estate, the principle involved in no manner impairs the power of the circuit court to supervise the acts of the assignee in his administration of the assigned estate, and to withhold its approval of his reports and acts, and to refuse to discharge him from his trust if he has been guilty of maladministration. The whole theory, scheme and policy of the statute relating to voluntary assignments is to have the administration conducted by an assignee subject to the supervision and approval of the court. The power to approve implies the right to prescribe the terms on which it will approve. And this carries with it the right to correct errors of the assignee and to control the distribution of the funds of the estate within the statutory limits, and to refuse credit to the assignee for any sum improperly paid out by him—resulting in charging the amount so paid out as so much cash in his hands. There is no merit in the contention that the court has no right to interfere in this respect except upon exceptions filed by some one in interest. Courts have an inherent right to refuse their aid to the consummation of a legal wrong, even if all the parties

to an action request it. And without the approval of the court the assignee's acts do not become consummate or complete. Neither is there any merit in the contention that because the assignee is liable on his bond for acts of maladministration, the court charged with the duty of approving his acts is powerless to remedy or prevent the wrongful act during the course of the administration. In respect to creditors, in allowance of claims, the assignee acts judicially. At all times he is the representative of the assignor and not of the creditors. [Jacobi v. Jacobi, 101 Mo. 507; Drew v. Drum, 44 Mo. App. 25; Green v. Conrad, 114 Mo. 651; Roan v. Winn, 93 Mo. 503.] But in his capacity as the collector and distributor of the assigned assets, his acts are subject to the approval of the court.

There are points of similarity and dissimilarity between assignees and administrators, executors or receivers, but there is no room, under the statute, to doubt the power of the court to refuse to approve any act of an assignee which constitutes maladministration, and to correct it at any time, and before it is completed. The fact that the assignee has given bond to protect parties in interest from his wrongful acts does not impair the power of the court to correct his acts at any time during the course of the administration. Of course where the assignee has applied to the court for instructions as to any particular matter and has followed the advice or order of the court, the court could not afterwards revoke that order to the injury of the assignee. But in all such cases the assignee must show that he submitted the whole matter to the court, so that it was fully advised in the premises, for otherwise if he is not fully protected it is his own fault in not fully advising the court.

From these considerations it follows that the court had full power to refuse to approve the sale of the Filley and Dana

notes to Brauer and Low, and that its action in so refusing was proper and right.

For these reasons the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith. All concur.