### TRABUE, Appellant, v. HENDERSON et al.

**Division One, March 17, 1904.**

1. **FRAUDULENT CONVEYANCE: Deed to Pay Debts.** A deed made by a son to his mother of his interest in his father's estate in consideration of the payment of debts which the estate had to pay because of the father's endorsement of the son's notes, and made for the purpose of saving the expense of administration, is not voluntary, and if the debts so paid exceed the value of the son's share in the estate, the deed can not be set aside as in fraud of the rights of the son's creditors.

2. ———: ———: **Son's Interest in Estate.** The debts which a son owes his father's estate because the father had become his surety in his lifetime, should be deducted from his interest in the estate, on administration; and if that interest is less than the debts, a deed made by him to his mother in order to facilitate her efforts to pay the debts, and to save the expense of administration, is not fraudulent as to his credtors, although by shrewd management the debts are all paid and the estate saved to the mother. Such a deed withdraws nothing from the son's creditors which could be seized by them.

Appeal from Jackson Circuit Court.—*Hon. C. O. Tichenor*, Special Judge.

AFFIRMED.

*Silas W. Dooley* for appellant.

The deed being voluntary and the grantor being insolvent it was void as to existing creditors, among others, for the following reasons: (a) No consideration was paid therefor. (b) The consideration was fictitious. (c) The assumption of the mortgage does not aid it. (d) The relationship of debtor and creditor did not exist between the grantor and grantee. (e) It was not given and accepted in satisfaction of any debt between the parties thereto. (f) The debts which the grantee testified she assumed were not a good consideration for said deed, because the estate of Eli Henderson was liable for the same and the same were paid by the estate not conveyed to her or under her control. (g) The grantee did not pay the debts that she testified that she assumed; they were paid out of the estate by the attorney and agent for the heirs of Eli Henderson and for them.

*Smith & Denton* for respondents.

(1) The law is well settled that the recited consideration in a deed of conveyance is not conclusive upon the parties thereto, but the actual consideration may at all times be shown. Ellis v. Bray, 79 Mo. 227; Allen v. Kennedy, 91 Mo. 324; Squier v. Evans, 127 Mo. 514. (2) Although the defendant, John M. Henderson, was insolvent at the time of the making of the deed of conveyance to his mother, she had a perfect right, under the law, to take a conveyance to herself of all of his property, to the exclusion of any or all of the other of his creditors, if she took no more than what was in value equal to the debts owing to her or the estate which she represented, provided she acted in good faith in so doing. Schroeder v. Bobbitt, 108 Mo. 291; Larrabee v. Franklin Bank, 114 Mo. 592; Wall v.

Beedy, 161 Mo. 625. (3) There is in this case not a scintillâ of evidence showing or tending to show bad faith upon the part of Mrs. Henderson, it being shown that at the time of the execution of the deed she had never even so much as heard of the plaintiff or of the fact that it was claimed her son John was either directly or contingently liable to him for the payment of any sum whatever. The burden was on the appellant to show bad faith upon the part of the respondent, Mrs. Henderson. Wall v. Beedy, supra. (4) The record shows beyond all dispute that more than the value of John Henderson's interest in his father's estate was paid for the conveyance which he made, and this being true, there was no fraud in the conveyance. Ayres v. King, 168 Mo. 244; Leitman v. Leitman, 149 Mo. 112; Duffy v. Duffy, 155 Mo. 144. (5) Even if there had been shown to be fraud in the conveyance from John Henderson to his mother, still because the plaintiff's purchase at the execution sale, under which he claims, was only a nominal amount, and only a small fraction of either the value of the interest claimed, or of the judgment debt, equity will not afford the plaintiff the relief asked. Woodward v. Masten, 106 Mo. 324.

MARSHALL, J.—This is a bill in equity to set aside a deed dated March 28, 1898, from the defendant John M. Henderson, to his mother, the defendant Sarah L. Henderson, to his undivided one-sixth interest in a certain four hundred and eighty acre tract of land in Bates county, of which his father, Eli Henderson, died seized on March 11, 1898, on the ground that it was a voluntary conveyance, without consideration and made for the purpose of defrauding his, John M. Henderson's, creditors, and especially the plaintiff, to whom he was at the time indebted in the sum of five hundred dollars, and which has since been reduced to judgment, and said John M. Henderson's interest in the land sold under execution to the plaintiff. The answers are gen-

eral denials. The venue was changed from Bates county to Jackson county, where the case was tried before Hon. C. O. TICHENOR as special judge. The court made the following special finding of fact, and entered judgment thereon for the defendants:

"That on the 8th day of February, 1898, the defendant, John M. Henderson, became indebted to the plaintiff, James L. Trabue, in the sum of $500, bearing interest at the rate of 8 per cent annually, said debt becoming due in September, 1898, by an assumption in a deed to him that Eli Henderson, who was the father of said John M. Henderson, died intestate March 11, 1898, seized of in fee, the following property, to-wit: The south half of section twenty-eight, township forty-two and range thirty-three, containing 320 acres; the northwest quarter of the northwest quarter and the north half of the northeast quarter of section thirty-three, township forty-two, range thirty-three, containing 120 acres; and the southeast quarter of the southwest quarter of section twenty-nine, township forty-two, range thirty-three, containing 40 acres, or 480 acres in all, in Bates county, Missouri; that the said Eli Henderson left as his heirs, his widow, the defendant Sarah L. Henderson, and six children, as follows: John M. Henderson, the defendant, Martha A. Ankrum, Elan, Asenath O., Lois Belle and Laura A. Hendrson, all of whom were on said date of age. That on the 24th day of March, 1898, the heirs above named, except Asenath, joined in and executed and acknowledged a power of attorney to said Asenath O., creating her their attorney in fact to manage the estate of their father, for them, and pay all the debts he owed. That on the 28th day of March, 1898, all the said children of Eli Henderson joined in a quitclaim deed which they duly executed, acknowledged and delivered, conveying all of their interest in and to said property to their mother, the defendant Sarah L. Henderson, for an expressed cash consideration of two thousand dollars, and the assump-

tion of a deed of trust for two thousand against part of the same, given to Duvall & Percival by Eli Henderson in his lifetime.   That the property has ever since been managed by Asenath O. Henderson, under said power of attorney.   That said deed is the one attacked and sought to be set aside in these proceedings.   That when said debt of defendant John M. Henderson to plaintiff J. L. Trabue, dated February 8, 1898, became due, September, 1898, the said John M. Henderson refused to pay same and suit was brought thereon to the February term, 1899, of the Bates County Circuit Court, and judgment thereon was had on the 18th day of July, 1899, at the June term, 1899, of said term for the sum of $561.15, debt and interest, also for his cost therein expended; that execution was duly issued thereon, and the sheriff of Bates county levied on the interest of the defendant John M. Henderson in and to the aforesaid 480 acres, and the same was duly advertised for sale, and sold on the 15th of February, 1900, at public auction, as required by law; that at said sale the plaintiff became the purchaser thereof for the sum of $12, and a deed for the same was duly executed, acknowledged and delivered to him for the same on the 22d day of December, 1900, which was duly recorded in the recorder's office of said Bates county on the 28th day of December, 1900, in book M-1, page 205, of said records.   The court further finds that the firm of Eli Henderson & Son, and composed of Eli Henderson and his son, the defendant John M. Henderson, was engaged in the business of buying and selling stock from the — day of March, 1895, to the last day of February, 1898, as shown by the books of the Merwin Bank, Merwin, Missouri, where they kept a running account during all that time and an account at the Farmers' Bank at Butler, Missouri.   That on or about the 29th of September, 1897, the said John M. Henderson, in his own name and for himself, purchased 335 head of cattle for $7,000, to pay for which he borrowed of Evans-Snider-Buell Com-

mission Company the sum of $7,000, and executed his individual note therefor, being two principal notes and one commission note as follows: one note for $2,467.60, due January 26, 1898, and one note for $4,638.65, due May 27, 1898, and one note for $167.50, due August 27, 1898, all of said notes dated September 29, 1897, with 8 per cent interest thereon. That after said cattle were bought, a large sum of money was borrowed to pay for feeding the same and notes were given therefor in the name of Eli Henderson & Son, and these notes amounted to $3,350. That all of these were for the individual debts of defendant John M. Henderson. That said cattle did not sell for enough to pay the debt to Evans-Snider-Buell Commission Company. That the balance due on this account for cattle and feed, after crediting proceeds of the sale of said cattle, was equal to the value of the interest of said John M. Henderson in the estate of his father, Eli Henderson, placing the value of the 480 acres of land on the 28th day of March, 1898, the date of said deed, at $27.50 per acre, which the court finds to be a fair valuation on said date. That prior to the sale of any of these cattle, to-wit, on the 9th day of November, 1897, all of said cattle, together with the hogs running with them and the feed on hand, were by written agreement, turned over by said John M. Henderson to his father, Eli Henderson, and the proceeds credited on the debt due Evans-Snider-Buell Commission Company, and the balance were sold by Asenath O. Henderson after her father's death, and the firm of Eli Henderson & Son was by the same agreement to cease on the 20th of January, 1898. The deed of trust for $2,000 assumed in the deed by the heirs to their mother has not been paid. That said deed was made without any intention on the part of any of the parties thereto, to cheat or defraud plaintiff or any one else. That said power of attorney executed by said heirs of Eli Henderson, deceased, to Asenath O. Henderson, was solely for the purpose of the administration of said

estate left by said Eli Henderson without the appoint-
ment of an administrator. That through the manage-
ment of said Asenath O. Henderson, under said power
of attorney, in feeding and selling stock, as well as the
products of said farm and money borrowed on the land,
all the debts of said Eli Henderson have been paid, in-
cluding the balance of the cost of said 335 head of cattle
and the debt incurred by Eli Henderson for feed
therefor.

"Wherefore, the court finds that at the time of the
death of the father, John M. Henderson was largely
indebted to his father by reason of debts paid by the
mother from the assets of the estate, including bor-
rowed money, as well as from her means, and that the
deed was made by him to his mother on account of said
indebtedness, so satisfied and to be satisfied. In other
words, that his said debts so paid were fairly equal to
the value of his interest in the estate; that this was a
good, fair and sufficient consideration on his part for
the deed to his mother.

"Wherefore, it is by the court ordered, adjudged
and decreed, that plaintiff can recover nothing in this
action, that defendants go hence without day, and that
they recover of plaintiff their costs in this behalf ex-
pended, and that execution issue therefor."

After proper steps the plaintiff appealed. The
facts necessary to a determination of the case will be
stated in the course of the opinion.

The principal contention of the plaintiff is that if
Eli Henderson took the cattle and assumed the debt
due thereon, there was no further liability of John M.
Henderson therefor, and hence there was no considera-
tion for the deed from John M. Henderson to his
mother, and it is therefore voluntary, without consid-
eration and fraudulent as to existing creditors, and
that Mrs. Henderson's innocence of fraud is immaterial.

The difficulty standing in the plaintiff's path is,
however, that his first postulate is not well founded.

There is no evidence in the case that Eli Henderson assumed John M. Henderson's debt growing out of the cattle. The facts are that about September, 1897, John bought three hundred and thirty-five cattle on his own account, intending to fatten them and sell them. He had no money, so he borrowed the money to pay for them from the Evans-Snider-Buell Commission Company of Kansas City, and gave his note therefor, secured by a mortgage on the cattle to that company, which aggregated $7,273.75. John had no money to buy feed for them, so he asked his father to help him, which his father did by indorsing his notes, which were discounted at the banks. The result was that the cost of feeding the cattle through the winter was about thirty-five hundred and thirty-three dollars. John and his father realized that there would be a loss on the cattle, so on November 8, 1897, they entered into an agreement dissolving the partnership that had theretofore existed between them. By the terms thereof, it was agreed that the cattle should remain in the father's possession until January 20, 1898, when two hundred should be sold or shipped to Kansas City and sold and the proceeds applied on the indebtedness of John to the Commission Company, and the remainder (140 head) should be placed on feed and pasture until ready for sale, when they should be sold, and the proceeds applied on the mortgage to the Commission Company, and that the cost of feeding them until sold should be paid by the firm.

It will be observed that Eli Henderson did not assume John's indebtedness, nor was it partnership indebtedness. Eli was indorser on John's notes for the money to pay for feed, and was interested in this way in seeing that the cattle brought as much as possible, but there is no evidence that Eli assumed John's indebtedness to the Commission Company.

About the time specified Eli shipped two hundred of the cattle to Kansas City and they were sold by the Commission Company, and realized $5,699.67. This left

a balance due by John to the Commission Company of
$1,574.08, and also left in his hands the one hundred
and forty head of cattle, which the evidence shows were
worth $2,209, and left Eli liable for feed bills amounting
to $3,533.01. Therefore, if Eli be charged with the
value of the 140 head and he be credited with the bal-
ance due the Commission Company, and with the notes
evidencing the feed bills, it would result in a net loss
to him of $2,898.09 arising out of this transaction alone.
But the evidence shows that in all John owed between
four and five thousand dollars for which his father was
security.  Eli died intestate, owning the four hundred
and eighty-acre tract of land, worth $27.50 an acre,
or $13,200, on which there was a mortgage for $2,500,
of which there was a balance due of $2,000, and owning
about five hundred dollars of personal property.  He
owed over ten thousand dollars, which included the four
or five thousand dollars security debts he owed for
John.  He left a widow and six children, all of age and
none of them owed anything except John.  The widow
owned an eighty-acre tract of land which adjoined the
four hundred and eighty-acre tract owned by Eli.

On the 28th of March, 1898, all the children joined
in a quitclaim deed to the land to their mother, and
as a part of the same transaction the mother and all the
children joined in a power of attorney to Miss Asenath
O. Henderson, one of the heirs, authorizing her to man-
age the property and pay off the debts.  This was done
to avoid the expense of an administration.  After four
years of most excellent management, out of the rents,
issues and profits of the four hundred and eighty acres
and of her mother's eighty acres, which was used for
the same purpose, and out of the profits made by her
while handling the matter, and out of the assets of the
estate, she paid off all of the debts of the estate, includ-
ing the four thousand dollars security debt which Eli
owed for John, and including what was still due the
Commission Company by John, and including the notes

for the feed; in fact, including everything except a mortgage for fifteen hundred dollars, which had been put on the land to raise money to pay a part of John's indebtedness for which Eli was surety.  After all this had been done, the plaintiff, whose debt was created after the dissolution of the partnership on November 8, 1897, brought this suit, and complains that the deed of the children to the mother, after their father's death, is fraudulent as to John's creditors and especially as to the plaintiff, and that it was voluntary and without consideration.

Turn the picture around and look at it from the other side and this is what it shows:   When Eli Henderson died, his estate was worth about twelve thousand dollars, and he owed over ten thousand dollars, of which about four thousand was as surety for John. Even if he had owed nothing John's share would have amounted to about two thousand dollars, and as he owed his father or his estate about four thousand dollars, his share of the estate would have been applied by the administrator to pay what he owed the estate and he would still have owed the estate about two thousand dollars. [Leitman v. Leitman, 149 Mo. 112.]

Therefore, if there had been an administration on the estate and no conveyance by John of his interest in the land, there would have been nothing coming to John out of the estate which the plaintiff could apply to his debt.   Clearly, therefore, if the ordinary course of winding up an estate had been followed, John would have gotten nothing from his father's estate and therefore the plaintiff would have gotten nothing.

The position of the plaintiff, therefore, resolves itself into this, that it was fraudulent for the parties to do an act which if it had been done according to the usual method of doing it through the probate court, would have been legal, and would have resulted in exactly the same thing so far as the plaintiff is con-

cerned.   That is, in neither event would the plaintiff get anything.   And the plaintiff would get nothing because John would get nothing.   And John would get nothing because he was entitled to nothing, for the reason that he owed the estate more than his inheritance amounted to.

It must be remembered, however, that the petition is based upon a charge that the conveyance from John to his mother was voluntary, without consideration and fraudulent, and in this light it must be adjudged.   It is not a petition charging that the deed was a conveyance in trust to secure John's creditors, and asking an accounting from the trustee.

It is manifest that there was no fraud intended or perpetrated by the deed.   As pointed out, it withdrew nothing from John's creditors that they could have seized.   It only accomplished out of court a result that would necessarily have followed in court if the estate had been regularly administered upon.   The learned trial judge, therefore, properly held that there was no fraud in the conveyance, and that John's inheritance had been properly applied to the payment of John's indebtedness to the estate.

There are other minor points urged, but the judgment is manifestly for the right party, and as the case is one in equity, mere errors, if they be errors, in reaching a right conclusion are not sufficient to justify a reversal of the judgment.   The judgment of the circuit court is affirmed.   All concur.