CORA S. THOMPSON, Appellant, v. HENRY L. McCUNE, Executor.— 63 S. W. (2d) 41.

Division One, August 24, 1933.

*Charles W. German, Lee C. Hull, Charles Z. German* and *Charles T. Given* for appellant; *Tyree G. Newbill* of counsel.

*McCune, Caldwell & Downing* for respondent.

STURGIS, C.—The plaintiff (appellant) filed in the Probate Court of Jackson County, Missouri, her petition or application asking for an order of that court directing and compelling the defendant as sole surviving executor of the estate of Charles W. Armour, deceased, to pay to her the legacy of $30,000 given her by the will of said deceased. Testator died in March, 1927, and his will was duly probated in Jackson County, Missouri, which will made defendant, Henry L. McCune, and Rebecca C. Armour, his widow, executors and they qualified and entered on the administration of his estate under authority of the Probate Court of Jackson County. Said will, among other provisions, contains this clause:

"I give and bequeath to Cora S. Thompson, widow of Hugh E. Thompson, of Kansas City, Missouri, on condition that she shall survive me, the sum of Thirty Thousand ($30,000.00) Dollars; her indebtedness, if any, to my estate to be charged against this."

It is this bequest which plaintiff by her motion asked the probate court to order defendant as executor to pay to her. The motion or application was filed in the probate court on April 5, 1928, a little more than a year after the Armour will was probated. The motion was against both executors, the widow of testator being then living, but since deceased.

The executors having filed their answer contesting the application or motion, the case was first tried in the probate court in June, 1928, resulting in a finding and judgment against plaintiff. She then appealed the matter to the circuit court where a trial *de novo* was had in February, 1930, which resulted in the circuit court directing a verdict for defendant, and judgment was entered accordingly, from which plaintiff has duly appealed to this court. After the trial in the probate court and before the trial *de novo* in the circuit court, the widow of testator, one of the executors, died and under the terms of the will defendant McCune became sole executor and the case has proceeded against him.

The answer of the defendants (executors), after admitting that the will of Charles W. Armour contained the clause mentioned giving to this plaintiff $30,000, with the further provision that "her indebtedness, if any, to my estate to be charged against this," set up as a defense to paying the bequest that this plaintiff was and is indebted to the estate of the testator in a sum exceeding $30,000, the amount of the bequest, said indebtedness being evidenced by two promissory notes, to-wit:

"$25,000.00                    Kansas City, Mo., August 15, 1917.

"On Demand after date I promise to pay to C. W. Armour or order Twenty-Five Thousand and no/100 Dollars, at office of ——————, Kansas City, Mo.

"For value received, with interest thereon at 5 per cent per annum from date until paid, interest payable semi-annually.

"(Signed)   CORA S. THOMPSON."

"$2557.36                       Kansas City, Mo., May 1, 1918.

"On Demand after date I promise to pay to C. W. Armour or order Twenty Five Hundred Fifty-Seven and 36/100 Dollars, at office of same, Kansas City, Mo.

"For value received, with interest thereon at 5 per cent per annum from —————— until paid, interest payable annually.

"(Signed)   CORA S. THOMPSON."

The answer containing this defense was filed in the probate court on June 4, 1928, and it will be noticed that at that time the larger note was nine months more than ten years past due and the smaller note was a month more than ten years past due. Hence it was that plaintiff by her reply set up the bar of the ten-year Statute of Limitations against the notes, claiming that same, being barred or "outlawed," did not constitute any indebtedness on her part to the Armour estate and afforded no legal reason for the executors not paying the legacy given her by the will. In this connection, however, it appears and is conceded that at the time Charles W. Armour executed his will in July, 1926, neither of these notes were barred by the ten-year Statute of Limitations, and such was also true at the date of his death and the probate of the Armour will in March, 1927. Also it appears that at the time plaintiff filed her motion or application for an order to compel the executors to pay her the legacy, to-wit, April 5, 1928, the larger note for $25,000 was then barred by the ten-year statute, but the smaller note lacked nearly a month of being barred.

In addition to the Statute of Limitations, the plaintiff set up by her reply that "there was no consideration moving to her for signing the said note for $25,000.00," and that she executed said note as an accommodation to C. W. Armour, testator; also that the payee, C. W. Armour, testator, long after their execution, "released and discharged the said Cora S. Thompson (plaintiff) from any obligation, if any, on said notes, or either of them." Not only did plaintiff fail to deny the execution of the notes under oath as required where that is a defense, but this statement is in effect an admission of the execution of these notes to C. W. Armour. On hearing the evidence the trial court ruled that there was no evidence to sustain either of these defenses, and as the execution of the notes stood admitted and the said notes, with interest, on their face showed an indebtedness of plaintiff

to the Armour estate in an amount larger than the amount of the legacy, the court directed a verdict and judgment against plaintiff. Was the court correct in so ruling?

As to the defense that the testator, C. W. Armour, in his lifetime released and discharged this plaintiff, maker of said notes, from any and all obligation thereon on her part, it is not seriously contended here that there was any evidence adduced to support such affirmative defense. The evidence adduced shows to the contrary. Not only was there no evidence that the notes were in any way canceled, destroyed or delivered back to the maker or released in any manner, but the uncontradicted evidence shows that the deceased, payee, carefully retained and preserved said notes, placing same with his valuable papers, carefully labeled in an envelope, along with the will itself, in his safety deposit box, where same were found by his executors after his death and were inventoried as part of his estate. Nor is it claimed that any consideration was given or received for any release or discharge of these obligations, or either of them. We are not now discussing the effect of the Statute of Limitations on these notes.

We note but do not find any force to the suggestion that the act of testator in charging off in 1922 as uncollectible the notes in question in his income tax return for that year is evidence that testator had or did release, discharge or extinguish plaintiff's liability on or obligation to pay such notes. The law permits the taxpayer in making his income tax return to charge off or deduct uncollectible notes or like obligations. Such is a matter purely between the taxpayer and the taxing authority, and if such charged-off obligations are found to have been improperly charged off or later prove to be collectible, the taxpayer must account therefor. Such charging off in no way has the legal effect of discharging, releasing or modifying the obligation of the promisor to the promisee. The evidence does show that at the time testator charged off these notes on his income tax return the plaintiff was probably insolvent as the Broom Corn Company, in which plaintiff was interested, had failed and quit business. From the standpoint of his estate, testator was justified in regarding the notes as not collectible. This was before he made his will and it will be noted that the bequest in the will is substantially commensurate with the amount of the two notes with interest. When testator gave plaintiff the bequest of $30,000 with the proviso to deduct therefrom her indebtedness to his estate, the practical effect was to square the account, and in this sense and in this manner only can it be said that testator intended to discharge and release plaintiff's indebtedness to him. As said in Lietman's Executor v. Lietman, 149 Mo. 112, 121, 50 S. W. 307, under similar facts, "Allowing the legacy to remain in the will, after the legatee became insolvent and ceased to pay interest, can only be construed into being an intention

on testator's part to permit the debt to be extinguished *pro tanto.*" The contention that the testator, C. W. Armour, had in his lifetime released and discharged this plaintiff as maker of said notes from all obligation thereon must be denied for want of any evidence to sustain same.

The defense of want of consideration applies only to the larger note for $25,000. Plaintiff admits that the smaller note for $2557.36 was really given for borrowed money, although plaintiff testified she had no recollection of executing same, but acknowledged her signature. As to the note for $25,000, it will be noticed that it recites that it is given for value received. The execution of it is not denied under oath. Failure or want of consideration of a note is an affirmative defense, the burden of proof being on the person so claiming. [Sec. 2653, R. S. 1929; Glascock v. Glascock, 217 Mo. 362, 117 S. W. 67.] When plaintiff on the witness stand was confronted with this note, she did not deny signing it and admitted that the signature appeared to be hers, but she further said that she had no recollection of signing the note and did not know why or how she came to sign it, except that Mr. Armour must have asked her to do so. The record shows, however, that the notes were given under these circumstances: Plaintiff was distantly related to testator and had been a member of his father's family many years prior to her marriage to Hugh E. Thompson, who was engaged in the broom corn business in Kansas City. After the death of plaintiff's husband, Hugh E. Thompson, in 1915, leaving this business to plaintiff and her minor children, a Mr. Simonds, a friend of the family and a distant relative of testator, took charge of and conducted the broom corn business at Mr. Armour's suggestion but with plaintiff's full consent. The business did not prosper under his management and the result was that in the summer of 1917 money was much needed in order to carry on the business. In the meantime, at Mr. Simonds' suggestion, the business had been incorporated under the name of Hugh Thompson Broom Corn Company, with the plaintiff and her children owning practically all of the stock. Under this situation the testator, having a friendly interest in the success of the broom corn company and more especially in the welfare of plaintiff and her children, agreed to and did furnish $25,000 to be used in that business. This money was deposited in the bank where the Thompson Broom Corn Company carried its account and was placed to the credit of that company. The capital stock of the company was then increased from $25,000 to $75,000, one-half the excess being paid up with the money furnished by testator. Plaintiff says, and we take it as true, that she was passive merely in the business affairs of the company, trusting the business transactions to Mr. Simonds and her young son, Hugh L. Thompson. She, however, knew of the company being in need of

funds to carry on the business, knew at the time or soon thereafter of testator furnishing this money, and says that she understood that the increased capital stock would go to her. Plaintiff testified that she never received any certificate of stock for these new shares, but it seems that the son signed the stub receipt for her. She admitted, however, that she received and cashed numerous checks from this Broom Corn Company from time to time on account of her being a large stockholder therein. There is at least enough in the record to show that plaintiff was a large stockholder in the Thompson Broom Corn Company and in consideration of testator furnishing that company with the $25,000 in cash, she executed the note in question. The fact that none of the money went directly to her, or as she says in her reply, "there was no consideration moving to her," is far from showing a want of consideration. ■ A consideration for a contract may be shown by proving a loss or some detriment to the promisee as well as by showing a benefit to the promisor. [Starr v. Crenshaw, 279 Mo. 344, 213 S. W. 811; Nelson v. Diffenderffer, 178 Mo. App. 48, 163 S. W. 271; Peoples State Bank v. Hunter, 216 Mo. App. 334, 339, 264 S. W. 54.] It is well settled that when a person interested in a firm, a corporation or business enterprise as a partner or stockholder gives his individual note for money loaned or advanced to such firm, corporation or business, such note is not without consideration. The furnishing of the money to the firm, corporation or business in which the maker of the note has an interest itself furnishes a consideration. [Holland Banking Co. v. Griggs, 323 Mo. 289, 295, 19 S. W. (2d) 290; First National Bank v. Henry (Mo. App.), 202 S. W. 281; Peoples State Bank v. Hunter, 216 Mo. App. 334, 264 S. W. 54.] Under such facts there is both a consideration by way of detriment to the payee or person furnishing the money as well as a benefit to the promisor.

In Holland Banking Co. v. Griggs, supra, certain stockholders, finding their bank in need of funds to carry on the business, gave their individual note for the money furnished their bank for that purpose. When sued on this note the defense of want of consideration was interposed, as to which this court said: "It clearly appeared that the $35,000 was borrowed by these directors and stockholders to keep the bank open, and that it was placed to the credit of and used by the bank. The note not only imported consideration (Lindell v. Rokes, 60 Mo. 249), but given under such circumstances, it is in fact supported by a valuable consideration."

We do not regard the holding in Glassbrenner v. Morgan (Mo. App.), 296 S. W. 201, as in conflict with our present holding.

In this connection plaintiff urges that the court improperly admitted in evidence or at least considered a purported stock certificate book showing the issuance of the two hundred and fifty shares of new stock to this plaintiff without any proper identification of the same.

This evidence, however, is not material since the uncontradicted evidence discloses sufficient facts to show that the notes were supported by a consideration.

The serious question in this case is the effect to be given the Statute of Limitations. If the two notes given by plaintiff to the testator are to be held as constituting an indebtedness on her part to the estate of testator and be deducted from the amount of the legacy given her by the will, as the trial court held, then such legacy is completely wiped out and the judgment for defendant is correct. It is conceded that at the time the will was executed and at the time of its probate these notes were not barred by the ten-year statute. Neither party, however, took any legal action either to enforce collection of the notes on behalf of the Armour estate or to enforce payment of the legacy to this plaintiff until more than a year after the will was probated and the administration of the estate commenced. Then plaintiff brought this action, the note for $25,000 being then barred and the other one nearly so, and when defendant executors filed their answer setting up these notes as a defense to any order to pay the legacy, both such notes were then more than ten years past due and hence barred by our limitation statute. It appears, however, that defendants, before the two notes in question were barred by limitation, informed plaintiff that they would set-off her indebtedness to the estate against her legacy.

■ It is well settled that an executor or administrator may, as to notes or other obligations constituting assets of the estate, take appropriate legal action to collect same, or may, without taking any such action to collect, if the maker of such note is a legatee or distributee of the estate, treat such indebtedness to the estate as a payment or set-off pro tanto against the legacy or distributive share of the estate. As said in State ex rel. v. Ennis, 222 Mo. App. 713, 716, 7 S. W. (2d) 737: "A note due an estate from a distributee is an asset of the estate in the hands of the administrator, who is charged with the duty of collecting it. Such a demand may be collected in either of two ways. The administrator may bring an independent action thereon in a court having jurisdiction thereof, or he may deduct the amount of such demand from the heir's distributive share of the estate and tender to the probate court his final settlement on that basis. The probate court may either approve or disapprove the action of the administrator in deducting the same and make final order of distribution in accordance with its findings, from which the aggrieved party may appeal. A distributee who is indebted to the estate is not entitled to receive his distributive share without first deducting therefrom his indebtedness to the estate."

It is correctly said in Gorg v. Rutherford (Mo. App.), 31 S. W. (2d) 585, 588: "An heir's interest in an estate consists of his distributive or inherited share, less what he owes the estate. (Cases

cited.) A demand of this character, due an estate from a distributee, may either be collected by the administrator bringing an independent action thereon in a court having jurisdiction thereof, or the administrator may deduct the amount of the demand from the heir's distributive share, whereupon the probate court may either approve or disapprove of the act of the administrator, and make a final order of distribution.''

If the legatee or distributee is insolvent or for any good reason the executor or administrator cannot or should not collect the excess, if there be any, of the amount due the estate over the legacy or distributive share of such debtor, there is no need of such executor or administrator taking any independent action to collect, but may without more elect to pay or cancel the legacy by applying thereto the indebtedness of the legatee or distributee to the estate. In such case the probate court has jurisdiction to adjudicate the rights of the parties in connection with approving the final settlement and making orders of distribution or to pay legacies. [Lietman's Executor v. Lietman, 149 Mo. 112, 50 S. W. 307; In re Excelsior Mfg. Co., 164 Mo. 316, 330, 64 S. W. 133; Trabue v. Henderson, 180 Mo. 616, 625, 79 S. W. 451.]

The only serious objection to the trial court's action in refusing to order plaintiff's legacy paid on account of her indebtedness to the Armour estate exceeding the amount of the legacy is that the notes evidencing plaintiff's indebtedness were barred by the ten-year Statute of Limitations and, as plaintiff claims, did not represent a then enforceable indebtedness.

There is a conflict of authorities on the question of whether what the authorities generally call a right of retainer or set-off is allowable when there is a legacy or right of distribution going to one who is indebted to the estate, but which debt is barred by the Statute of Limitations. It is conceded that the only case in this State on that question is Lietman's Executor v. Lietman, 149 Mo. 112, 50 S. W. 307, which holds that such right exists in favor of the executor, though the indebtedness is barred by limitation. This court there said: ''It is wholly immaterial whether the debt of the legatee is barred by limitation or not, the right to write it off against the legacy remains unimpaired by any lapse of time. [2 Woerner Am. Law of Adm. (2 Ed.) sec. 564; Tinkham v. Smith, 56 Vt. 187.]'' These and many other authorities so hold. It is urged, however, that the exact point was not necessary to a decision of the Lietman case and that what the court said was mere *dictum*. It is true that in that case the indebtedness to the estate which the court held was properly used to wipe out the legacy to the same debtor was not shown to be barred by limitation, but only that the legatee and debtor to the estate had become bankrupt before the will was probated and was

insolvent and a nonresident, so that he could not even be sued by the executor upon the indebtedness due the estate. The court there held that the probate court, though not having any equitable powers to deduct a debt due the estate by a legatee from a legacy due the debtor, yet the powers given the probate court in making final settlements of estates and directing distribution to the heirs or legatees clothes such court with ample power in that respect. It also held that the right and power of an executor or administrator to deduct a debt due the estate from a legacy or distributive share going to such debtor does not depend on or grow out of the doctrine of advancements, nor the doctrine of set-off where there must be a mutual indebtedness. Nor is it necessary, as plaintiff contends here, that the executor take some affirmative action to enforce the debt due the estate. The court there said: "The conclusion reached by that court (the St. Louis Court of Appeals in an overruled case), that the only remedy was for the administrator to have the interest of the distributee impounded, in equity, and have it applied to the extinguishment of the debt, being based upon false premises must also fall, in the light of the direct methods pointed out in the authorities herein cited for reaching the same end, and of the jurisdiction of our probate courts." The right of the executor to deduct a debt due the estate from a legacy given by the will is what is called by many courts and law writers the right of retainer, which means that the executor has the right to retain or hold the legacy which is in his hands by treating the debt due the estate from the legatee as assets of the estate, also in his hands, and collected by deducting same from the legacy. As to the nature and source of the authority of an executor or administrator to deduct from the legacy or distributive share of an heir a debt which he owes the estate, the court said: "The American doctrine places it upon the ground that the debt is already in the hands of the executor as assets collected by being deducted from the legacy, thereby practically enforcing the common-law doctrine of retainer. (Cases cited.) . . . It matters not by what name the proceeding is called, whether retainer, advancement, set-off or assets in the hands of the legatee, the practical result is the same and it rests upon wholesome principles of right and justice, which can be administered in probate courts, without the aid of a court of conscience." When, therefore, this court in the Lietman case, supra, said that "It is wholly immaterial whether the debt of the legatee is barred by limitation or not, the right to write it off against the legacy remains unimpaired by any lapse of time," it was not uttering mere *obiter dictum*, but such was the logical and inevitable result of the nature and origin of such right and the necessary conclusion from the legal principles involved and established in that case. When this court ruled that the right of the executor to deduct the indebtedness of the

legatee to the estate from the legacy was not dependent on the *mutuality of the indebtedness,* as is the right of set-off, then it necessarily follows that the destruction of the mutuality of the indebtedness by reason of the debt to the estate being barred by limitation is of no importance.

An examination of the textbooks and the decisions in other jurisdictions shows that the ruling of this court in the Lietman case is in accordance with the weight of authority. To review the cases would be a long and difficult task. It will suffice to call attention to the exhaustive annotations and collection of cases on this question appended to the case of Wilson v. Channell (Kan.), 1 A. L. R. 987, 1007, where it is said: "The cases are in conflict upon the question whether there is a right of retainer in respect of debts which have become barred by the Statute of Limitations. The weight of authority, however, is to the effect that the amount of the statute-barred debt may be applied by the executor, or administrator, in satisfaction of the debtor's legacy, or distributive share. This is upon the theory that the Statute of Limitations bars only the right of action, and not the debt itself, and therefore that, where property of the debtor comes into the hands of the creditor, the statute does not preclude his appropriating such property to the payment of the debt." [See the many cases there cited.] In this connection it should be noticed that as to personal actions, the doctrine in this State is that the Statute of Limitations does not extinguish the debt, but that it only bars the remedy, so that the indebtedness to the estate continues, though the remedy is barred, and such constitutes a sufficient basis to support the doctrine of retainer allowing a deduction of the barred debt from the legacy. [Miller v. Miller, 169 Mo. App. 432, 438, 155 S. W. 76; Stock v. Schloman, 322 Mo. 1209, 1217, 18 S. W. (2d) 428; Cowan v. Mueller, 176 Mo. 192, 197, 75 S. W. 606.] Later annotations and citation of cases on this question of right of retainer in case of barred debts will be found appended to the case of Woods v. Knotts (Iowa), 30 A. L. R. 768, 778, and to Bruce v. Farrar (Va.), 75 A. L. R. 872, 880. In the recent case of In re Lindmeyer's Estate (Minn.), 235 N. W. 377, the court, after citing many cases, said that, "The weight of authority is to the effect that the amount of the outlawed debt may be applied by the representative of the estate in satisfaction of the amount to be paid to the distributee. This is upon the theory that the Statute of Limitations bars only the right of action, the remedy, and not the debt itself." Since, therefore, the ruling of this court in the Lietman case, supra, accords with the great weight of authority, we are not inclined to repudiate same even if found to be *obiter dictum.*

There is another reason also why we should in the present case uphold the doctrine that the legacy in question should not be paid for the reason that plaintiff's indebtedness to the Armour estate,

though barred by limitation, exceeds the amount of the legacy. Such is in accordance with the terms of the will itself. As we have seen, the terms of the will giving this legacy to plaintiff provides that ''her indebtedness, if any, to my estate to be charged against this.'' At the time the will was made and even at testator's death, these notes to testator were not barred and they must have been the indebtedness in the mind of the testator when he wrote this provision in the will. There was no other indebtedness on the legatee's part to the estate. All the authorities are to the effect that a provision annexed to a bequest directing indebtedness to the estate to be deducted therefrom covers debts barred by limitation as well as those not barred.

The learned author of the annotation in 1 A. L. R. at page 1009 says: ''Irrespective of the attitude of the courts in any particular jurisdiction on the question where a legacy may be retained in satisfaction of a statute-barred debt owed to the testator, it is uniformly held that where a testator directs that any debts due, or owing to him, from legatees, shall be brought into the division of the estate, or deducted from the share of the one so indebted, the debt must be deducted, though barred by the Statute of Limitations.'' The supporting cases are there cited. The basis of this rule is that a testator may condition his bounty in any way he sees fit and the legatee must take the bounty, if at all, on the terms imposed. [Gillingham's Estate, 220 Pa. 353, 69 Atl. 809; Lockerby v. Sawyer, 220 Mich. 147, 189 N. W. 989.] The testator has the same power to impose on the legatee the payment of debts barred by limitation as he has those not barred. [In re Fussell's Estate (Iowa), 105 N. W. 503.] Even in states which deny the doctrine of the right of retainer as applied to debts barred by limitation, the rule is adhered to that, when the will itself directs that any debt due or owing to the estate shall be deducted from the share given the testator, this direction applies to debts barred by limitation. [Cummings v. Bramhall, 120 Mass. 552, 561; Avery Power Machinery Co. v. McAdams, 177 Ark. 518, 7 S. W. (2d) 770; Gray v. Hayhurst, 157 Ill. App. 488, 503; Baker v. Safe Deposit & Trust Co., 93 Md. 368, 381, 48 Atl. 920.]

We hold, therefore, that under the undisputed facts of this case the plaintiff was not entitled to receive her legacy in face of the fact that she was indebted to the estate in a larger amount, and the judgment of the trial court is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.

school district does not have ''the right to name or appoint any per-