W. F. Duvall and Regina Duvall, Appellants, v. W. E. Duncan and Myrtle Duncan.—111 S. W. (2d) 89.

Division Two, December 17, 1937.

*L. J. Bishop, D. C. Chastain* and *Patterson, Chastain, Graves & Smith* for appellants.

*David B. Logsdon, H. E. Finch* and *B. R. McGuire* for respondents.

COOLEY, C.—Action in two counts, the first in ejectment, the second to quiet title. The land described in both counts is the same. The case was tried to a jury. The verdict was for defendants below, respondents here, on both counts, and judgment went accordingly. Plaintiffs appealed.

Plaintiffs (husband and wife) claim title under a trustee's deed to them, made pursuant to sale under a deed of trust dated June 1, 1933, acknowledged June 9, 1933, securing a note of $2650, dated June 1, 1933, signed by the Duncans, husband and wife. No question is raised as to the regularity of the foreclosure proceedings or that the trustee's deed is not sufficient on its face to convey title. After the foreclosure sale defendants, theretofore owners and in possession of the lands in question, refused to surrender possession and this suit followed. The only question presented on this appeal is whether or not there was a valid consideration for said $2650 note. Defendants claim said note was without consideration and that the deed of trust securing it was therefore without consideration and invalid and the sale thereunder unauthorized and void.

The note in question was held at the time of the foreclosure by W. F. Duvall, who had acquired it from the Farmers Bank of Bates County, the named payee. The question of consideration requires a statement of facts leading up to the giving of the note.

In May, 1927, W. F. Duvall was president of said bank, Homer Duvall was an active officer thereof. Defendant W. E. Duncan was and for some years had been a customer of the bank, transacting his business with the bank, he says, through Homer Duvall as the bank's representative. He was largely indebted to the bank, the bank records showing a then total indebtedness of $4400, part of which was secured by chattel mortgage but the major part unsecured. He and his wife also owed debts to other parties secured by deeds of trust on property not here involved. It appears that foreclosure of a deed or deeds of trust on said other properties was being threatened by the holder or holders thereof—not by said Farmers Bank.

In this situation on May 11, 1927, the Duncans executed two notes. one for $2000 due in two years and one for $3000 due in three years, payable to the bank, and as security therefor a deed of trust on the property here in question. The $3000 note was immediately turned over to Mrs. Duncan. It was never claimed by the bank as an asset or as collateral and for practical purposes may be treated as having dropped out of the case. The $2000 note was retained by the bank, which has at all times since claimed, as do plaintiffs herein, that the bank took and held that note as collateral for Duncan's unsecured debts to it.

The testimony of the Duncans was to the effect that said $2000 note was not given as collateral and was not to be considered as

belonging to the bank but was left with the bank or with Homer Duvall to keep for them—the Duncans—sort of as mere custodian, but not as owner in any sense. They say that the $3000 and $2000 notes and the deed of trust securing them were made at the suggestion of Homer Duvall, their trusted friend, who advised them that if the threatened foreclosure of the deeds of trust on other properties went to consummation, it might result in a deficit in payment of those debts, with remaining liability against them for such deficit and possible subjection of the real estate here involved, (then unincumbered), to payment of such deficit. While rather glossed over the effect of their testimony on this subject, we think, may fairly be said to be that said $3000 and $2000 notes and the deed of trust securing them were given for the sole purpose of "covering up" the property in question from possible,—and feared,—claims of creditors. other than the bank. As to the $3000 note the bank seems to have been in a complaisant frame of mind. As to the $2000 note the bank and subsequent holders have always contended that it was taken as collateral for Duncan's indebtedness. In 1932 it was shown on the bank records as collateral for a $2425 note of Duncan's, which appeared to have been a renewal of a prior note or notes. The bank sold said $2425 note and with it said $2000 note as collateral to W. F. Duvall on July 14, 1932, for value but after maturity.

In May, 1933, default having been made in payment of the $2000 note, W. F. Duvall, the then holder, caused the property herein involved to be advertised for sale under said deed of trust of May 11, 1927. The sale was advertised for June 9, 1933. On June 7th defendants herein filed an injunction suit in the Circuit Court of Bates County to prevent such sale. The petition in that suit alleged, among other things, that there never had been any consideration for said $2000 note and that it had not been delivered to the bank nor to Homer Duvall for the bank, but was only left with Homer Duvall "as the agent of plaintiffs (defendants here) to retain the same for safe keeping only." The petition in said injunction suit prayed a temporary injunction restraining the threatened sale and also a permanent injunction, cancellation of the note and deed of trust and general relief.

W. F. Duvall was not named as a defendant in the injunction suit, the named defendants therein being Homer Duvall, the bank and the sheriff who, as substitute trustee had advertised the sale (the named trustee having refused to act). W. F. Duvall is referred to in that petition as agent and president of the bank and it is alleged that the named defendants "or some one for them" caused the land to be advertised for sale. The petition alleged that the plaintiffs there, defendants here, did not know who then held said $2000 note. There was a full hearing of said injunction suit, so far at least as

concerned the prayer for temporary injunction, before the court on the morning of June 9th, the day on which the sale was advertised to be made. At that hearing defendants here, plaintiffs there, testified, as did Mrs. Duncan's brother-in-law. They are the same witnesses and the only witnesses who testified on behalf of defendants in the instant suit. W. F. Duvall, though not named as a defendant in the injunction suit, testified as a witness at said hearing, as did Homer Duvall. The evidence then taken is not before us, but it is clear from the record that the question of consideration was thoroughly gone into and that the Duncans gave substantially the same testimony on that question as at the trial of the instant case. Not only was that issue squarely presented by their petition in the injunction suit, but their then attorney, Mr. DeArmond, a reputable lawyer whose veracity is not here questioned (called as a witness by plaintiffs in this case), testified that in the injunction suit he thought the only ground on which he hoped he might obtain the injunction sought was the alleged want of consideration and that he went into that subject thoroughly.

At the close of that hearing the court denied the temporary injunction. No further proceedings were taken in court. The parties then all repaired to the bank where the $2650 note and the deed of trust securing same, through the foreclosure of which plaintiffs herein claim, were executed. The papers were dated June 1, 1933, but were executed and delivered June 9th and the deed of trust was acknowledged as of the latter date. Thereupon the advertised sale was "called off," as it was understood and agreed it should be, the $2000 note was canceled and the deed of trust securing it was released of record. The $2650 note and deed of trust included principal and accrued interest of the $2425 note and an item of $11.60 which Duncan owed the bank and which W. F. Duvall paid, Duncan receiving the credit.

The Duncans testified at this trial, in substance and effect, that they executed the $2650 note and deed of trust, after the hearing and decision of their injunction suit, as the only means of saving their property, since otherwise it would have been sold that day. They said they were so advised, but neither of them testified that W. F. or Homer Duvall or anyone connected with the bank so advised them. On the contrary it clearly appears from their testimony that such and the only "advice" given them was by their own attorney, who accompanied them to the bank and advised them concerning the execution of the new note and deed of trust.

At the close of the evidence herein plaintiffs requested peremptory directions to the jury to find for them on the second count, the "quiet title" count, and on the first count for possession, leaving to the jury only the question of the value of monthly rents and profits.

(No other damages were asked in the petition.) The court refused those instructions and gave instructions submitting only the question of consideration, in effect directing a verdict for plaintiffs if the jury found there was a consideration for the $2650 note and for defendants if said note was without consideration.

On the facts of this case, conceded or established by defendants' testimony, we think plaintiffs' requested peremptory instructions should have been given. While there is some general intimation in defendants' answer of fraud in the procurement of the $2650 deed of trust through which plaintiffs claim title, fraud was not sufficiently pleaded nor was it proved, and that contention, if intended to be made, was abandoned. Duress in the execution of said deed of trust was not pleaded or proved, apparently not relied upon. The only question urged, as we have above said, is want of consideration. If there was a valid consideration for the $2650 note plaintiffs were entitled to recover.

As to the $2000 note and the deed of trust securing it there was a dispute between the Duncans, makers thereof, on the one hand and the bank, the named payee, and W. F. Duvall, holder, when said holder started foreclosure proceedings under that deed of trust and when the injunction suit was brought to restrain such foreclosure. Under the evidence there can be no doubt that the bank's claim of the original ownership of that note as collateral, and of W. F. Duvall's ownership by purchase from the bank, was *bona fide.* It was not a mere sham or pretense. Especially must this be held to be true in view of the court's decision in the injunction suit, wherein the Duncans' claim of want of consideration was fully heard and the facts on that issue developed. After that hearing and the court's decision the holder of said note clearly had a legal right to proceed with his foreclosure, as the Duncans knew. They were so advised by their own attorney. So knowing and for the purpose of preventing that threatened sale and gaining time they executed the $2650 note and deed of trust here in question.

The settlement or compromise of a doubtful claim is a sufficient legal consideration to support a promise. See the following:

Mullanphy v. Riley, 10 Mo. 489, holding that a note given by way of settlement and to avoid trouble, expense and risk of litigation where the law was doubtful and there was a difference of opinion was not invalid for want of consideration, also that a benefit to the promisor or some trouble or prejudice to the promisee constitutes a valuable consideration; Nelson v. Diffenderffer, 178 Mo. App. 48, l. c. 54, 163 S. W. 271, wherein it is said: "The settlement of a disputed or doubtful claim, whether valid in fact or not, is also a sufficient consideration to support a promise to pay" (citing cases), and (178 Mo. App. l. c. 55, 163 S. W. 271). "It is not necessary that a

supposed consideration be of some real value to the promisor. It is sufficient that it is any detriment or inconvenience to the promisee or that he change his relations or relinquish his supposed right against the promisor or a third party in consequence of such promise'' (citing cases); Starr v. Crenshaw, 279 Mo. 344, 213 S. W. 811, 814 (2), consideration defined as ''a benefit to the party promising, or a loss or detriment to the party to whom the promise was made;'' Thompson v. McCune, 333 Mo. 758, 63 S. W. (2d) 41, 43 (2-5), consideration may be loss or some detriment to the promisee as well as benefit to the promisor; Given v. Corse, 20 Mo. App. 132, agreement to withdraw execution and have it returned unsatisfied was waiver of legal right by execution creditor to his inconvenience and sufficient consideration for promise to pay the judgment. In the latter case syl. 1 says:

''In general, a waiver of any legal right, at the request of another party, or any benefit to the defendant, or detriment to the plaintiff, or any act done at the defendant's request and for his convenience, or to the inconvenience of the plaintiff, would be sufficient to support a promise by the defendant.''

In Chenoweth v. Pacific Express Co., 93 Mo. App. 185, 193, it is said that to constitute legal consideration there must be ''either benefit to the maker of the promise or the waiver of some legal right, a loss, trouble or inconvenience to . . . the party to whom the promise is made,'' and that ''it is said in some of the elementary books that consideration means not so much that one party is profited as the other abandons some legal right in the present or limits his legal freedom of action in the future as an inducement for the act or promise for the first.''

Many other cases to like effect might be cited. The legal principle announced in the above-cited cases is well established. Also it is the law that want of consideration for a note is an affirmative defense, the burden of proving which rests upon the party asserting it. [Thompson v. McCune, supra.]

In the instant case there was a dispute as to whether or not there had been a consideration for the $2000 note. Appellants say that such question became *res adjudicata* by reason of the decision in the injunction suit, denying the temporary injunction. Respondents say not, because W. F. Duvall was not a party to that suit and because it did not go to final judgment. Apropos of the latter contention it may be remarked that there remained nothing for a permanent injunction to operate upon after the advertised sale was stopped and said $2000 note was canceled and the deed of trust securing it released of record. But we deem it unnecessary to decide the question of whether or not said decision in the injunction suit amounted technically to *res adjudicata*. Whether it did or not the holder of

said $2000 note thereafter clearly had the right to proceed with his foreclosure. He abandoned that right, canceled and surrendered the note and released the deed of trust securing it because of the giving of the $2650 note and deed of trust. While the words "compromise" and "settlement" do not appear from the record to have been used by the parties in the negotiations in connection with the execution of the $2650 note and deed of trust, it is clear that the Duncans gave said note and deed of trust for the purpose and with the understanding that in consequence thereof the then impending sale would be stopped and the $2000 note canceled and the deed of trust securing it released and that said $2650 note and deed of trust were accepted and acted upon in accordance with such understanding. Duvall surrendered the $2425 note he then held, stopped the advertised sale, surrendered and canceled the $2000 note he held as collateral and released of record the deed of trust securing it, taking in lieu thereof said $2650 note and deed of trust. Call it compromise or settlement of a disputed claim, or what you will, it seems to us that, on the facts here shown, conceded or established by defendants' testimony, there was conclusively a valid consideration for said $2650 note and deed of trust. It follows that plaintiffs' requested peremptory instructions should have been given.

The above conclusion renders it unnecessary to discuss alleged errors in the giving and refusal of other instructions and regarding the admission of certain testimony concerning the $2000 note. The judgment is reversed and the cause is remanded, with directions to the circuit court to proceed in accordance with the views herein expressed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.