**Anna Sacks FEINBERG (Plaintiff), Respondent,**

v.

**PFEIFFER COMPANY, a Corporation, Formerly Known as S. Pfeiffer Manufacturing Co., a Corporation (Defendant), Appellant.**

Nos. 30183, 30204.

St. Louis Court of Appeals.

Missouri.

March 17, 1959.

Motion for Rehearing or for Transfer to Supreme Court Denied April 13, 1959.

Robert S. Allen; Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for appellant.

J. Leonard Kline, Sylvan Agatstein, St. Louis, for respondent.

DOERNER, Commissioner.

This is a suit brought in the Circuit Court of the City of St. Louis by plaintiff, a former employee of the defendant corporation, on an alleged contract whereby defendant agreed to pay plaintiff the sum of $200 per month for life upon her retirement. A jury being waived, the case was tried by the court alone. Judgment below was for plaintiff for $5,100, the amount of the pension claimed to be due as of the date of the trial, together with interest thereon, and defendant duly appealed.

The parties are in substantial agreement on the essential facts. Plaintiff began working for the defendant, a manufacturer of pharmaceuticals, in 1910, when she was but 17 years of age. By 1947 she had attained the position of bookkeeper, office manager, and assistant treasurer of the defendant, and owned 70 shares of its stock out of a total of 6,503 shares issued and outstanding. Twenty shares had been given to her by the defendant or its then president, she had purchased 20, and the remaining 30 she had acquired by a stock split or stock dividend. Over the years she received substantial dividends on the stock she owned, as did all of the other stockholders. Also, in addition to her salary, plaintiff from 1937 to 1949, inclusive, received each year a bonus varying in amount from $300 in the beginning to $2,000 in the later years.

On December 27, 1947, the annual meeting of the defendant's Board of Directors was held at the Company's offices in St. Louis, presided over by Max Lippman, its then president and largest individual stockholder. The other directors present were George L. Marcus, Sidney Harris, Sol Flammer, and Walter Weinstock, who, with Max Lippman, owned 5,007 of the 6,503 shares then issued and outstanding. At that meeting the Board of Directors adopted the following resolution, which, because it is the crux of the case, we quote in full:

"The Chairman thereupon pointed out that the Assistant Treasurer, Mrs. Anna Sacks Feinberg, has given the corporation many years of long and faithful service. Not only has she served the corporation devotedly, but with exceptional ability and skill. The President pointed out that although all of the officers and directors sincerely hoped and desired that Mrs. Feinberg would continue in her present position for as long as she felt able, nevertheless, in view of the length of service which she has contributed provision should be made to afford her retirement privileges and benefits which should become a firm obligation of the corporation to be available to her whenever she should see fit to retire from active duty, however many years in the future such retirement may become effective. It was, accordingly,

proposed that Mrs. Feinberg's salary which is presently $350.00 per month, be increased to $400.00 per month, and that Mrs. Feinberg would be given the privilege of retiring from active duty at any time she may elect to see fit so to do upon a retirement pay of $200.00 per month for life, with the distinct understanding that the retirement plan is merely being adopted at the present time in order to afford Mrs. Feinberg security for the future and in the hope that her active services will continue with the corporation for many years to come. After due discussion and consideration, and upon motion duly made and seconded, it was—

"Resolved, that the salary of Anna Sacks Feinberg be increased from $350.00 to $400.00 per month and that she be afforded the privilege of retiring from active duty in the corporation at any time she may elect to see fit so to do upon retirement pay of $200.00 per month, for the remainder of her life."

At the request of Mr. Lippman his sons-in-law, Messrs. Harris and Flammer, called upon the plaintiff at her apartment on the same day to advise her of the passage of the resolution. Plaintiff testified on cross-examination that she had no prior information that such a pension plan was contemplated, that it came as a surprise to her, and that she would have continued in her employment whether or not such a resolution had been adopted. It is clear from the evidence that there was no contract, oral or written, as to plaintiff's length of employment, and that she was free to quit, and the defendant to discharge her, at any time.

Plaintiff did continue to work for the defendant through June 30, 1949, on which date she retired. In accordance with the foregoing resolution, the defendant began paying her the sum of $200 on the first of each month. Mr. Lippman died on November 18, 1949, and was succeeded as president of the company by his widow. Because of an illness, she retired from that office and was succeeded in October, 1953, by her son-in-law, Sidney M. Harris. Mr. Harris testified that while Mrs. Lippman had been president she signed the monthly pension check paid plaintiff, but fussed about doing so, and considered the payments as gifts. After his election, he stated, a new accounting firm employed by the defendant questioned the validity of the payments to plaintiff on several occasions, and in the Spring of 1956, upon its recommendation, he consulted the Company's then attorney, Mr. Ralph Kalish. Harris testified that both Ernst and Ernst, the accounting firm, and Kalish told him there was no need of giving plaintiff the money. He also stated that he had concurred in the view that the payments to plaintiff were mere gratuities rather than amounts due under a contractual obligation, and that following his discussion with the Company's attorney plaintiff was sent a check for $100 on April 1, 1956. Plaintiff declined to accept the reduced amount, and this action followed. Additional facts will be referred to later in this opinion.

■ Appellant's first assignment of error relates to the admission in evidence of plaintiff's testimony over its objection, that at the time of trial she was sixty-five and a half years old, and that she was no longer able to engage in gainful employment because of the removal of a cancer and the performance of a colocholecystostomy operation on November 25, 1957. Its complaint is not so much that such evidence was irrelevant and immaterial, as it is that the trial court erroneously made it one basis for its decision in favor of plaintiff. As defendant concedes, the error (if it was error) in the admission of such evidence would not be a ground for reversal, since, this being a jury-waived case, we are constrained by the statutes to review it upon both the law and the evidence, Sec. 510.310 RSMo 1949, V.A.M.S., and to render such judgment as the court below ought

to have given. Section 512.160, Minor v. Lillard, Mo., 289 S.W.2d 1; Thumm v. Lohr, Mo.App., 306 S.W.2d 604. We consider only such evidence as is admissible, and need not pass upon questions of error in the admission and exclusion of evidence. Hussey v. Robison, Mo., 285 S.W.2d 603. However, in fairness to the trial court it should be stated that while he briefly referred to the state of plaintiff's health as of the time of the trial in his amended findings of fact, it is obvious from his amended grounds for decision and judgment that it was not, as will be seen, the basis for his decision.

█ Appellant's next complaint is that there was insufficient evidence to support the court's findings that plaintiff would not have quit defendant's employ had she not known and relied upon the promise of defendant to pay her $200 a month for life, and the finding that, from her voluntary retirement until April 1, 1956, plaintiff relied upon the continued receipt of the pension installments. The trial court so found, and, in our opinion, justifiably so. Plaintiff testified, and was corroborated by Harris, defendant's witness, that knowledge of the passage of the resolution was communicated to her on December 27, 1947, the very day it was adopted. She was told at that time by Harris and Flammer, she stated, that she could take the pension as of that day, if she wished. She testified further that she continued to work for another year and a half, through June 30, 1949; that at that time her health was good and she could have continued to work, but that after working for almost forty years she thought she would take a rest. Her testimony continued:

"Q. Now, what was the reason— I'm sorry. Did you then quit the employment of the company after you— after this year and a half? A. Yes.

"Q. What was the reason that you left? A. Well, I thought almost forty years, it was a long time and I thought I would take a little rest.

"Q. Yes. A. And with the pension and what earnings my husband had, we figured we could get along.

"Q. Did you rely upon this pension? A. We certainly did.

"Q. Being paid? A. Very much so. We relied upon it because I was positive that I was going to get it as long as I lived.

"Q. Would you have left the employment of the company at that time had it not been for this pension? A. No.

"Mr. Allen: Just a minute, I object to that as calling for a conclusion and conjecture on the part of this witness.

"The Court: It will be overruled.

"Q. (Mr. Agatstein continuing): Go ahead, now. The question is whether you would have quit the employment of the company at that time had you not relied upon this pension plan? A. No, I wouldn't.

"Q. You would not have. Did you ever seek employment while this pension was being paid to you—A. (interrupting): No.

"Q. Wait a minute, at any time prior—at any other place? A. No, sir.

"Q. Were you able to hold any other employment during that time? A. Yes, I think so.

"Q. Was your health good? A. My health was good."

It is obvious from the foregoing that there was ample evidence to support the findings of fact made by the court below.

We come, then, to the basic issue in the case. While otherwise defined in defendant's third and fourth assignments of error, it is thus succinctly stated in the argument in its brief: " * * * whether plaintiff has proved that she has a right to recover from defendant based upon a legally bind-

ing contractual obligation to pay her $200 per month for life."

It is defendant's contention, in essence, that the resolution adopted by its Board of Directors was a mere promise to make a gift, and that no contract resulted either thereby, or when plaintiff retired, because there was no consideration given or paid by the plaintiff. It urges that a promise to make a gift is not binding unless supported by a legal consideration; that the only apparent consideration for the adoption of the foregoing resolution was the "many years of long and faithful service" expressed therein; and that past services are not a valid consideration for a promise. Defendant argues further that there is nothing in the resolution which made its effectiveness conditional upon plaintiff's continued employment, that she was not under contract to work for any length of time but was free to quit whenever she wished, and that she had no contractual right to her position and could have been discharged at any time.

Plaintiff concedes that a promise based upon past services would be without consideration, but contends that there were two other elements which supplied the required element: First, the continuation by plaintiff in the employ of the defendant for the period from December 27, 1947, the date when the resolution was adopted, until the date of her retirement on June 30, 1949. And, second, her change of position, i. e., her retirement, and the abandonment by her of her opportunity to continue in gainful employment, made in reliance on defendant's promise to pay her $200 per month for life.

██ We must agree with the defendant that the evidence does not support the first of these contentions. There is no language in the resolution predicating plaintiff's right to a pension upon her continued employment. She was not required to work for the defendant for any period of time as a condition to gaining such retirement benefits. She was told that she could quit the

day upon which the resolution was adopted, as she herself testified, and it is clear from her own testimony that she made no promise or agreement to continue in the employ of the defendant in return for its promise to pay her a pension. Hence there was lacking that mutuality of obligation which is essential to the validity of a contract. Middleton v. Holecraft, Mo.App., 270 S.W. 2d 90; Solace v. T. J. Moss Tie Co., Mo. App., 142 S.W.2d 1079; Aslin v. Stoddard County, 341 Mo. 138, 106 S.W.2d 472; Fuqua v. Lumbermen's Supply Co., 229 Mo.App. 210, 76 S.W.2d 715; Hudson v. Browning, 264 Mo. 58, 174 S.W. 393; Campbell v. American Handle Co., 117 Mo.App. 19, 94 S.W. 815.

██ But as to the second of these contentions we must agree with plaintiff. By the terms of the resolution defendant promised to pay plaintiff the sum of $200 a month upon her retirement. Consideration for a promise has been defined in the Restatement of the Law of Contracts, Section 75, as:

"(1) Consideration for a promise is
(a) an act other than a promise, or
(b) a forbearance, or
(c) the creation, modification or destruction of a legal relation, or
(d) a return promise,
bargained for and given in exchange for the promise."

As the parties agree, the consideration sufficient to support a contract may be either a benefit to the promisor or a loss or detriment to the promisee. Industrial Bank & Trust Co. v. Hesselberg, Mo., 195 S.W. 2d 470; State ex rel. Kansas City v. State Highway Commission, 349 Mo. 865, 163 S.W.2d 948; Duvall v. Duncan, 341 Mo. 1129, 111 S.W.2d 89; Thompson v. McCune, 333 Mo. 758, 63 S.W.2d 41.

Section 90 of the Restatement of the Law of Contracts states that: "A promise which the promisor should reasonably expect to induce action or forbearance of a

definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This doctrine has been described as that of "promissory estoppel," as distinguished from that of equitable estoppel or estoppel in pais, the reason for the differentiation being stated as follows:

"It is generally true that one who has led another to act in reasonable reliance on his representations of fact cannot afterwards in litigation between the two deny the truth of the representations, and some courts have sought to apply this principle to the formation of contracts, where, relying on a gratuitous promise, the promisee has suffered detriment. It is to be noticed, however, that such a case does not come within the ordinary definition of estoppel. If there is any representation of an existing fact, it is only that the promisor at the time of making the promise intends to fulfill it. As to such intention there is usually no misrepresentation and if there is, it is not that which has injured the promisee. In other words, he relies on a promise and not on a misstatement of fact; and the term 'promissory' estoppel or something equivalent should be used to make the distinction." Williston on Contracts, Rev. Ed., Sec. 139, Vol. 1.

In speaking of this doctrine, Judge Learned Hand said in Porter v. Commissioner of Internal Revenue, 2 Cir., 60 F.2d 673, 675, that "* * * 'promissory estoppel' is now a recognized species of consideration."

As pointed out by our Supreme Court in In re Jamison's Estate, Mo., 202 S. W.2d 879, 887, it is stated in the Missouri Annotations to the Restatement under Section 90 that:

" 'There is a variance between the doctrine underlying this section and

the theoretical justifications that have been advanced for the Missouri decisions.' "

That variance, as the authors of the Annotations point out, is that:

"This § 90, when applied with § 85, means that the promise described is a contract without any consideration. In Missouri the same practical result is reached without in theory abandoning the doctrine of consideration. In Missouri three theories have been advanced as ground for the decisions (1) *Theory of act for promise.* The induced 'action or forbearance' is the consideration for the promise. Underwood Typewriter Co. v. Century Realty Co. (1909) 220 Mo. 522, 119 S.W. 400, 25 L.R.A., N.S., 1173. See § 76. (2) *Theory of promissory estoppel.* The induced 'action or forbearance' works an estoppel against the promisor. (Citing School District of Kansas City v. Sheidley (1897) 138 Mo. 672, 40 S. W. 656 [37 L.R.A. 406]) * * * (3) *Theory of bilateral contract.* When the induced 'action or forbearance' is begun, a promise to complete is implied, and we have an enforceable bilateral contract, the implied promise to complete being the consideration for the original promise." (Citing cases.)

Was there such an act on the part of plaintiff, in reliance upon the promise contained in the resolution, as will estop the defendant, and therefore create an enforceable contract under the doctrine of promissory estoppel? We think there was. One of the illustrations cited under Section 90 of the Restatement is: "2. A promises B to pay him an annuity during B's life. B thereupon resigns a profitable employment, as A expected that he might. B receives the annuity for some years, in the meantime becoming disqualified from again obtaining good employment. A's promise is binding." This illustration is objected to by defendant as not being applicable to the case at hand. The reason advanced by it is

that in the illustration B became "disqualified" from obtaining other employment *before* A discontinued the payments, whereas in this case the plaintiff did not discover that she had cancer and thereby became unemployable until *after* the defendant had discontinued the payments of $200 per month. We think the distinction is immaterial. The only reason for the reference in the illustration to the disqualification of A is in connection with that part of Section 90 regarding the prevention of injustice. The injustice would occur regardless of when the disability occurred. Would defendant contend that the contract would be enforceable if the plaintiff's illness had been discovered on March 31, 1956, the day before it discontinued the payment of the $200 a month, but not if it occurred on April 2nd, the day after? Furthermore, there are more ways to become disqualified for work, or unemployable, than as the result of illness. At the time she retired plaintiff was 57 years of age. At the time the payments were discontinued she was over 63 years of age. It is a matter of common knowledge that it is virtually impossible for a woman of that age to find satisfactory employment, much less a position comparable to that which plaintiff enjoyed at the time of her retirement.

The fact of the matter is that plaintiff's subsequent illness was not the "action or forbearance" which was induced by the promise contained in the resolution. As the trial court correctly decided, such action on plaintiff's part was her retirement from a lucrative position in reliance upon defendant's promise to pay her an annuity or pension. In a very similar case, Ricketts v. Scothorn, 57 Neb. 51, 77 N.W. 365, 367, 42 L.R.A. 794, the Supreme Court of Nebraska said:

"* * * According to the undisputed proof, as shown by the record before us, the plaintiff was a working girl, holding a position in which she earned a salary of $10 per week. Her grandfather, desiring to put her in a position of independence, gave her the note accompanying it with the remark that his other grandchildren did not work, and that she would not be obliged to work any longer. In effect, he suggested that she might abandon her employment, and rely in the future upon the bounty which he promised. He doubtless desired that she should give up her occupation, but, whether he did or not, it is entirely certain that he contemplated such action on her part as a reasonable and probable consequence of his gift. Having intentionally influenced the plaintiff to alter her position for the worse on the faith of the note being paid when due, it would be grossly inequitable to permit the maker, or his executor, to resist payment on the ground that the promise was given without consideration."

The Commissioner therefore recommends, for the reasons stated, that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. The judgment is, accordingly, affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.