Louis PARNAS, Executor of the Estate of Morris S. Parnas, Deceased (Plaintiff), Appellant,

v.

UNIVERSAL–ENGEL PAPER BOX COMPANY, a Corporation (Defendant), Respondent.

No. 30336.

St. Louis Court of Appeals.

Missouri.

March 15, 1960.

Motion for Rehearing or for Transfer to Supreme Court Denied April 12, 1960.

Susman, Mayer & Willer, Gerald A. Rimmel, Earl Susman, St. Louis, for appellant.

Rassieur, Long & Yawitz, Elliott P. Koenig, Allen A. Yoder, St. Louis, for respondent.

WOLFE, Presiding Judge.

■ This is an action, brought by the executor of the estate of Morris S. Parnas, deceased, in which the executor seeks to recover from the Universal-Engel Paper Box Company, the defendant, the sum of $6,558.35. This sum is claimed by the executor to be owing the estate of Morris S. Parnas by reason of a resolution passed by the Board of Directors of the corporation awarding Morris S. Parnas a pension. The trial was to a jury, but at the close of the plaintiff's case the court directed a verdict for the defendant upon defendant's motion, and the plaintiff has appealed.

The petition of the executor of the Parnas estate made the following allegations:

"That on or about December 27, 1954 the defendant corporation agreed with Morris S. Parnas, deceased, that in consideration of the sale by Morris S. Parnas of his stock in the defendant corporation to certain new interests who were taking over and purchasing the control of the defendant corporation and of his voluntary retirement as an employee, officer and director of the defendant corporation and in further consideration and in recognition of his past services to pay him a pension in the sum of Seven Thousand Five Hundred Dollars ($7,500.00), payable Two Thousand Five Hundred Dollars ($2,-500.00) per year for a period of three years, commencing in January, 1955, and ending December, 1957."

A motion for a bill of particulars was filed by the defendant requesting that the plaintiff state whether or not the agreement alleged was oral or in writing and with whom made. It was also requested that if said agreement was in writing a copy of such writing be set out. The motion was sustained, and in response thereto the plain-

tiff filed his bill of particulars stating that the agreement referred to was formally entered into at a special meeting of the Board of Directors of the Universal-Engel Paper Box Company on the 27th of December, 1954, at which time there was passed the following resolution:

"Resolved, that in recognition of years of past faithful service to the corporation that there shall be paid to M. S. Parnas by the corporation a pension in the sum of $2,500.00 per year for a period of three (3) years commencing in January, 1955, and ending December, 1957."

The evidence was that Morris S. Parnas, who died May 25, 1955, had been a stockholder, director, and officer of the Universal-Engel Paper Box Company for many years. Almost all of the stock of the company was owned by four persons, William J. Engel, Ida Engel, Ely Parnas, and Morris S. Parnas. Each of these owned approximately one-fourth of all of the stock of the corporation. William J. Engel, Ely Parnas, and Morris Parnas were directors and officers of the corporation.

In 1954 the company was in serious financial difficulties. It could not pay its creditors, and the stockholders had pledged their stock to the Central Fibre Products Company. This company was the largest creditor of the Universal-Engel Paper Box Company, and it was threatening to foreclose on the stock pledged.

The president of the Universal-Engel Paper Box Company attempted to find a buyer for the business, and with a view of selling he talked to a Mr. Robert A. Smiley, who was also engaged in the business of manufacturing paper boxes. Smiley said that he would be interested in a deal if he could obtain all of the capital stock of the Universal-Engel Paper Box Company. Engel conveyed this information to the other stockholders and consulted with the company lawyer, Mr. Malcolm I. Frank.

Mr. Frank suggested that the best way for Engel to close the transaction with Mr.

Smiley was to place himself in a position to deliver the stock. This was done by Engel securing an option agreement from each stockholder, in which agreements Mr. Frank was named as the transfer agent.

After all of the agreements had been signed a special meeting of the Board was called. Present at the meeting was a full membership of the Board, including M. S. Parnas. The resolution set out above was passed, in which it was stated "that in recognition of years of past faithful service to the corporation that there shall be paid to M. S. Parnas by the corporation a pension in the sum of $2,500.00 per year for a period of three (3) years commencing in January, 1955, and ending December, 1957." After passing the resolution the directors announced that they had sold all of their stock and tendered their respective resignations as members of the Board, and new directors were elected, and the meeting adjourned.

Mr. Smiley, one of the purchasers of the corporation stock, testified that he agreed with Mr. Engel to purchase the stock. He conferred with the officers of the Central Fibre Products Company and learned that they would release the stock pledged to them if he purchased it. He attended the special meeting of the Board of Directors, and after the resolution mentioned was passed and Morris Parnas resigned as an officer and director of the company, he gave each of the principal stockholders a check for $2,500 for their stock, and the stock was transferred to him and to his brother. He testified that it had been agreed that Mr. Engel would stay on and work for the company and that Ely Parnas would remain as Superintendent of Maintenance, but that there was no place in the organization for Morris Parnas. The latter had had a heart attack the previous year and had been absent from work for about six months. Smiley said that in view of this he saw no point in offering him a job.

Smiley further testified that payments were made on the pension to Morris Parnas

monthly up to the time of his death. The payments totaled $941.65. The testimony of other witnesses was for the most part similar to that given by Mr. Smiley. It was upon this evidence that the court ruled that the resolution passed by the Board of Directors, which was the instrument in writing pleaded and relied upon, did not provide for the payment of $7,500 to Parnas, but only for a pension of $2,500 per year for a period of three years, and that as a matter of law there was no liability beyond the life of the pensioner.

■ It is of course true that the construction of an unambiguous written instrument is for the court. Dixon v. Business Men's Assurance Co. of America, 365 Mo. 580, 285 S.W.2d 619. No question is raised about this, but it is contended that the court erred in holding that the pension terminated with the death of Parnas, and it is asserted that a pension "may be and frequently is paid the survivors of the original beneficiary". In support of his theory that liability for the pension did not terminate on the death of Parnas, the appellant cites us to Ulmann v. Sunset-McKee Company, 9 Cir., 1955, 221 F.2d 128. This was a suit for money alleged to have fallen due to the estate of the deceased employee of the defendant after his death by reason of a "pension". The facts in that case involved the construction of the word "pension" in connection with certain contractual agreements reached with the corporation upon the termination of Ulmann's employment. We have in the case before us no contract with the corporate defendant.

The resolution upon which the plaintiff relies states "that in recognition of years of past faithful service" a pension was to be paid to Parnas. Such a promise standing alone is without consideration, and is merely a gratuity because there must be a mutuality of contract to bind the parties to it. Under the terms of the resolution nothing was required of Parnas. Feinberg v. Pfeiffer Company, Mo.App., 322 S.W.2d 163; Middleton v. Holecroft, Mo.App., 270

S.W.2d 90; Aden v. Dalton, 341 Mo. 454, 107 S.W.2d 1070.

■ The appellant attempts to insert the question of estoppel. Estoppel was not pleaded nor relied upon below, and if it had been there was no evidence that Parnas did anything in reliance upon a promise by the corporation. There must be some action or forbearance by the person asserting promissory estoppel, and there was none here. For a full discussion of this subject, see Feinberg v. Pfeiffer, supra.

■ The appellant sought to introduce throughout the trial evidence relating to the contract to sell the Parnas stock to Smiley. His theory was that the resolution was ambiguous and therefore required evidence of the facts surrounding it in order to clarify its meaning. When the plaintiff specifically stated in his bill of particulars that the agreement he sought to enforce "was formally entered into * * *" at a special meeting of the Board of Directors, and followed this with a verbatim copy of the resolution, he was specifically basing his action upon that resolution. The reason for this is that under section 509.310 RSMo 1949, V.A.M.S., "a bill of particulars becomes a part of the pleading which it supplements."

All of the evidence that plaintiff sought to introduce related to the negotiations leading to and consummating contracts between the original stockholders of the Universal-Engel Paper Box Company, with Mr. Frank as transfer agent. These contracts were the method employed by them to transfer their ownership and the control of the corporation to Mr. Smiley. The corporation itself was not a party to the contracts. The option contract signed by Morris Parnas recited that he agreed to sell his stock for $2,500, and that he was to receive a salary of $2,500 a year for three years. The idea of a salary was at complete variance with the resolution which the plaintiff sought to explain by the contract, and if it had been admissible it would not have supported the position of plaintiff.

The court therefore properly held that the evidence offered was inadmissible, and that the resolution carried with it no benefits which survived Morris Parnas.

The direction of a verdict for the defendant was proper, and the judgment is therefore affirmed.

ANDERSON and RUDDY, JJ., concur.